United States Bankruptcy Court
Southern District of Texas
ENTERED
December 17, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LION RIBBON TEXAS CORP., *et al.*, | : | Case No. 25-90164 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

**ORDER (I) APPROVING DEBTORS' DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING FIRST AMENDED JOINT PLAN OF LIQUIDATION OF LION RIBBON TEXAS CORP. AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***")[2] having:

a. commenced, on July 3, 2025 (the "***Petition Date***"), these chapter 11 cases (these "***Chapter 11 Cases***") by filing voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***");

b. filed, on July 6, 2025, the *Declaration of Brett M. Anderson in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 21], detailing the facts and circumstances of these Chapter 11 Cases;

c. continued to operate their business and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

d. filed, on November 6, 2025, the *Emergency Motion of Debtors for Entry of Order (I) Conditionally Approving the Disclosure Statement, (II) Establishing Voting Record Date, Voting Deadline, and Other Confirmation-Related Deadlines, (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, (IV) Approving*

---

1 A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DGA. The Debtors' mailing address for the purposes of these cases is 2015 West Front Street, Berwick, PA 18603.

2 Capitalized terms used but not otherwise defined herein have the meanings given to them in *First Amended Joint Plan of Liquidation Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 815] (as amended, modified, or supplemented from time to time, the "***Plan***")

*Form and Manner of Related Notices and Other Documents, and (V) Granting Related Relief* [Docket No. 669];

e. filed, on November 6, 2025, the solicitation versions of (i) the *Joint Plan of Liquidation Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 667] (the "***Solicited Plan***"); and (ii) the *Disclosure Statement for Joint Plan of Liquidation of Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 668] (as may be modified, amended, or supplemented from time to time, the "***Disclosure Statement***");

f. obtained, on November 13, 2025, entry of the *Order (I) Conditionally Approving the Disclosure Statement, (II) Establishing Voting Record Date, Voting Deadline, and Other Confirmation-Related Deadlines, (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, (IV) Approving Form and Manner of Related Notices and Other Documents, and (V) Granting Related Relief* [Docket No. 689] (the "***Solicitation Procedures Order***") conditionally approving the adequacy of the Disclosure Statement and approving the Solicitation Procedures with respect to the Plan;

g. filed, on November 13, 2025, the *Notice of Hearing on Final Approval of Disclosure Statement and Confirmation of Debtors' Proposed Joint Chapter 11 Plan of Liquidation* [Docket No. 690] (the "***Combined Hearing Notice***");

h. on or about November 18, 2025, caused the Solicitation Packages (as defined in the Solicitation Procedures Order) and the Combined Hearing Notice—which, among other things, notified parties of the deadline for objecting to Confirmation of the Plan—to be distributed in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "***Local Rules***"), the Solicitation Procedures Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 854] the ("***Certificate of Solicitation***");

i. caused the Combined Hearing Notice to be published, on November 18, 2025, in *The Wall Street Journal* (national edition), as evidenced by the *Certificate of Publication* [Docket No. 804] (the "***Certificate of Publication***");

j. filed, on December 3, 2025, the *Plan Supplement for the Joint Plan of Liquidation of Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 817] (as may be modified, amended, or supplemented from time to time, the "***First Plan Supplement***") and the Plan;

k. filed on December 12, 2025, the *Notice of Filing of Revised Schedule of Retained Causes of Annexed to Plan Supplement for the First Amended Joint Plan of Liquidation of Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 871] (as may be modified, amended, or supplemented

from time to time, the "***Second Plan Supplement***" and together with the First Plan Supplement, the "***Plan Supplement***");

l. filed, on December 12, 2025, the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Joint Plan of Liquidation of Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 866] (the "***Voting Report***");

m. filed, on December 12, 2025, (i) the *Declaration of Durc Savini in Support of Confirmation of the First Amended Joint Plan of Liquidation of Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 867] (the "***Savini Declaration***"); and (ii) the *Declaration of Brett M. Anderson in Support of Confirmation of the First Amended Joint Plan of Liquidation of Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 869] (together with the Voting Report and the Savini Declaration, the "***Confirmation Declarations***"); and

n. filed, on December 12, 2025, the *Debtors' Memorandum of Law in Support of Confirmation of the First Amended Joint Plan of Liquidation of Lion Ribbon Texas Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (the "***Confirmation Brief***").

The Bankruptcy Court having:

a. set December 10, 2025 at 4:00 p.m. (prevailing Central Time) as the deadline for filing objections to confirmation of the Plan;

b. set December 10, 2025 at 4:00 p.m. (prevailing Central Time) as the deadline for voting on the Plan;

c. set December 15, 2025 at 1:00 p.m. (prevailing Central Time) as the date and time for the Combined Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d. reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Report, the Combined Hearing Notice, the Certificate of Solicitation, the Certificate of Publication, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

e. held the Combined Hearing;

f. heard and considered the statements and arguments made by counsel in respect of Confirmation;

g. considered all testimony presented and evidence admitted at the Combined Hearing, as applicable;

h. overruled any and all objections to the Plan and Confirmation and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

i. taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation of the Plan and final approval of the Disclosure Statement are adequate and appropriate as to all parties affected or to be affected by the Plan or the Disclosure Statement and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and final approval of the Disclosure Statement and other evidence presented at the Combined Hearing and the record of these Chapter 11 Cases establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Finding of Fact and Conclusions of Law

1. The findings and conclusions set forth herein and in the record of the Combined Hearing constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by this Bankruptcy Court at the Combined Hearing in relation to Confirmation of the Plan and final approval of the Disclosure Statement are hereby incorporated into this Combined Order and are essential, inextricable, and nonseverable components and terms of this Combined Order and the treatment and distributions provided under the Plan. To the extent any of the following findings of fact

constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B. Jurisdiction and Venue**

2. The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Venue in the Bankruptcy Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). The Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

**C. Burden of Proof**

3. The Debtors, as proponents of the Plan, have met their burden of proving that the Plan complies with each element of section 1129(a) and, to the extent applicable, section 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

**D. Notice of the Combined Hearing**

4. Notice of the Combined Hearing was appropriate and satisfactory and is approved in all respects.

**E. Judicial Notice**

5. The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the Chapter 11 Cases.

## F. Plan Supplement

6. The Plan Supplement complies and is consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the documents contained therein were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement including, for the avoidance of doubt, any amendment, modification, or supplement thereto. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. All Holders of Claims or Interests who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement. Subject to the terms of the Plan, the Debtors, with the consent of the DIP Lender and the Committee, reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules; *provided* that, no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Combined Order or the terms of the Plan.

## G. Transmittal and Mailing of Materials; Notice

7. As evidenced by the Certificate of Solicitation, due, timely, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, the Combined Hearing, the opportunity to opt out of the Third-Party Release (as defined below), and other dates and deadlines described in the Solicitation Procedures Order, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, has been given in substantial compliance with the Bankruptcy Court's orders, all applicable Bankruptcy Rules, and all other applicable rules, laws, and regulations, and no further notice is or shall be required. All

parties in interest had the opportunity to appear and be heard at the Combined Hearing, and no other or further notice is required.

8. The Debtors published the Combined Hearing Notice in *The Wall Street Journal* in substantial compliance with the Solicitation Procedures Order and Bankruptcy Rule 2002(1), as evidenced by the Certificate of Publication.

**H. Solicitation**

9. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations. Specifically, the Disclosure Statement, the Solicited Plan, the Combined Hearing Notice, the Ballots, and other materials constituting the solicitation materials approved by the Bankruptcy Court in the Solicitation Procedures Order, were transmitted to and served on all Holders of Claims and Interests in the Voting Classes, and the solicitation materials (not including Ballots) were also provided to the other key parties in interest in these Chapter 11 Cases, in compliance with section 1125 of the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order. The Combined Hearing Notice, Notice of Non-Voting Status, Contract/Lease Notice, and Opt-Out Release Form (each as defined in the Solicitation Procedures Order) were provided to Holders or potential Holders of Claims in the Non-Voting Classes (as defined in the Solicitation Procedures Order) and any other non-voting parties entitled to notice. Such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required. All procedures used to distribute the solicitation materials and other notices and documents described in the Solicitation Procedures Order were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

10. Each of the Debtors, the Exculpated Parties, the Released Parties and, with respect to each of the foregoing parties, each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly but, for the avoidance of doubt, excluding IG Design Group plc and its Affiliates, successors, and assigns), and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, have acted fairly, in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the Disclosure Statement and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to preparing, negotiating, supporting, and consummating the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

11. The Debtors, the Exculpated Parties, the Released Parties and with respect to each of the foregoing parties, each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly but, for the avoidance of doubt, excluding IG Design Group plc and its Affiliates, successors, and assigns), and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

12. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and applicable non-bankruptcy law. Based on the record before the Bankruptcy Court, including the Voting Report, the Certificate of Solicitation, and the Certificate of Publication, the Debtors have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and not by any means forbidden by law.

**I. Adequacy of Disclosure Statement**

13. The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy rules, laws, and regulations, including the Securities Act, (b) contains "adequate information" (as such term is defined in Section 1125(a) of the Bankruptcy Code and used in Section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is hereby approved in all respects.

**J. Voting Report**

14. As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, the Solicitation Procedures Order, and any applicable nonbankruptcy law, rule, or regulation. As evidenced by the Voting Report, Classes 3 and 6 have voted to accept the Plan.

**K. Bankruptcy Rule 3016**

15. The Plan is dated and identifies the Debtors as the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

16. The Disclosure Statement (including all exhibits thereto) and the Combined Hearing Notice provided Holders of Claims and Interests and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article X of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

**L. Modifications of the Plan**

17. The amendments and modifications to the Solicited Plan since the filing thereof, including as reflected and incorporated into the Plan, are shown in the redline filed with the Court on December 3, 2025 [Docket No. 815, Exhibit A]. Adequate and sufficient notice of such amendments and modifications, including any modifications to the Plan that this Combined Order may be construed to effectuate (collectively, the "***Plan Modifications***"), has been given. The Plan Modifications do not individually, or in the aggregate, materially or adversely affect or change the treatment of any Claim against, or interest in, any of the Debtors. Accordingly, no other or further notice, disclosure under section 1125 of the Bankruptcy Code, nor resolicitation of votes under section 1126 of the Bankruptcy Code, is or shall be required and such Plan Modifications are approved in full in accordance with section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a). The Plan, as modified by the Plan Modifications, is deemed accepted by all creditors who have previously accepted the Plan and the Plan Modifications do not require that Holders of Claims or Existing Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. All rights of the Debtors or the Reorganized Debtors to modify the Plan and the documents that comprise the Plan Supplement, in accordance with the terms thereof, are reserved.

**M. Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

1. Sections 1122 and 1123(a)(1)—Proper Classification

18. The classification of Claims and Interests under the Plan is proper and satisfies the requirements of the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into six Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Fee Claims, and Statutory Fees, Priority Tax Claims, and DIP Claims, which are addressed in Article II of the Plan and which have not been classified in accordance with section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

2. Section 1123(a)(1)-(4)—Compliance

19. In accordance with section 1123(a) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that the Plan: (a) designates Classes of Claims and Interests, other than Claims of a kind specified in sections 507(a)(2) and 507(a)(8) of the Bankruptcy Code; (b) specifies Classes of Claims that are not Impaired under the Plan; (c) specifies the treatment of Classes of Claims and Interests that are Impaired under the Plan; and (d) provides the same treatment for each Claim or Interest in a particular Class, unless the Holder of a particular Claim or Interest agrees to

less favorable treatment of such Claim or Interest. Therefore, the Plan satisfies the requirements of section 1123(a)(1)-(4) of the Bankruptcy Code.

3. Section 1123(a)(5)—Adequate Means of Implementation

20. Article V and various other provisions of the Plan provide adequate and proper means for the Plan's implementation. Those provisions relate to, among other things: (a) the establishment of a Liquidating Trust and the vesting of the Liquidating Trust Assets in the Liquidating Trust; (b) the appointment of a Liquidating Trustee who will, among other things, effectuate the Claims reconciliation process, make Distributions to Holders of Allowed Claims (and, potentially, to Holders of Allowed Existing Interests to the extent General Unsecured Claims are paid in full with Post-Petition Interest), prosecute or settle any Retained Causes of Action, and complete the Wind-Down of the Debtors and the Non-Debtor Subsidiaries; (c) the establishment of the Joint Creditor/Equityholder Consent/Consultation Rights with respect to the Liquidating Trust; (d) the cancellation of certain documents evidencing or creating any prepetition Claim or Interest; and (e) the authority to undertake corporate actions necessary to effectuate the Plan. **Moreover, on the Effective Date, the Liquidating Trustee, through access to the Wind-Down Reserve, will have sufficient Cash to make all payments required under the Plan and to fund the Liquidating Trust's Wind-Down of the Debtors and their Estates.** The Plan therefore complies with section 1123(a)(5) of the Bankruptcy Code.

4. Section 1123(a)(6)—Prohibition Against the Issuance of Nonvoting Securities and Adequate Provisions for Voting Power of Classes of Securities

21. Section 1123(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases because the Plan contemplates (a) the dissolution of the Debtors' corporate existences as soon as practicable after the Effective Date, and (b) no issuance of new securities of the Debtors.

5. Section 1123(a)(7)—Directors & Officers

22. Following the Confirmation Date, and prior to the occurrence of the Effective Date, the then-current officers, directors, and managers of each of the Debtors shall continue in their respective capacities in accordance with the applicable by-laws or other organizational documents, and the Debtors shall execute such documents and take such other action as is necessary to effectuate the actions provided for in the Plan.

23. On and after the Effective Date, the Liquidating Trustee shall serve as the sole shareholder, interest holder, officer, director, or manager of each of the Debtors, as applicable, under applicable state law. The Liquidating Trustee shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a company's board of directors or equivalent body and officers and have obligations to maximize Distributions to Liquidating Trust Beneficiaries (including, for the avoidance of doubt, Holders of Existing Equity Interests in accordance with the terms of the Plan). The existing directors and officers of the Debtors shall be deemed to have resigned on the Effective Date; *provided* that the Independent Director shall retain his authority following the Effective Date with respect to matters relating to Professional Fee Claim requests by Professionals acting at his authority and direction in accordance with the terms of the Plan. The Independent Director shall not have any of his privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Wind-Down Debtors, Liquidating Trustee, the Liquidating Trust, or any other entity without the Independent Director's prior written consent.[3] The Independent Director retains the right to review, approve, and make decisions, and to file papers and be heard before the Bankruptcy Court, on all matters under his

[3] Without waiving the foregoing, the Independent Director will cooperate with the Liquidating Trustee to pursue any Claims against non-released parties.

continuing authority as specifically set forth in the Plan. The Liquidating Trustee, subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

24. The Debtors disclosed the identity of, and the material terms of engagement for, the Liquidating Trustee in the Liquidating Trust Agreement that was included in the Plan Supplement. In accordance with the Plan and the Liquidating Trust Agreement, the Debtors selected Durc Savini to serve as the initial Liquidating Trustee. On the Effective Date, Mr. Savini, without the need for further action or approval, shall be appointed as the initial Liquidating Trustee pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trust Agreement and the terms thereof are hereby approved, and the Debtors and the Liquidating Trustee are each authorized to enter into and perform under the Liquidating Trust Agreement. After the Effective Date, the Liquidating Trustee shall be authorized to file each Debtor's tax returns, consistent with the terms of the Plan and the Liquidating Trust Agreement.

25. The manner of selection of the Liquidating Trustee is consistent with the interests of creditors and other stakeholders, as well as with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

6. Section 1123(b) – Discretionary Contents of the Plan

26. The Plan contains various discretionary provisions that, although not required for confirmation under the Bankruptcy Code, are integral to the Plan. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code. As a result thereof, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

*i. Section 1123(b)(1)-(2)—Claims and Interests; Executory Contracts and Unexpired Leases*

27. Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, respectively, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, and Article VI of the Plan provides for the assumption or rejection of the Executory Contracts and Unexpired Leases of the Debtors to the extent not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code or otherwise provided under the Plan, and provides appropriate authorizing orders of the Bankruptcy Court.

*ii. Section 1123(b)(3)—Release, Exculpation, Third-Party Release, Injunction, and Preservation of Claims Provisions*

28. **Settlement of Claims and Interests**. In accordance with 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan (the "***Plan Settlements***"). The compromises and settlements embodied in the Plan are the result of extensive, arm's-length, good-faith negotiations and represent a fair and reasonable compromise of all Claims, Interests, and controversies and entry into which represented a sound exercise of the Debtors' business judgment. The compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and satisfy the requirements of applicable law for approval pursuant to Bankruptcy Rule 9019.

29. **Release by the Debtors**. The release of Claims and Causes of Action by the Debtors, the Wind-Down Debtors, and Representatives described in Article X.B of the Plan (the "***Debtor Release***") is an essential and critical provision of the Plan and formed an integral part of the agreement embodied in the Plan among all parties in interest. The Debtor Release, which

includes by reference each of the related provisions and definitions contained in the Plan, is: (a) within the jurisdiction of the Bankruptcy Court pursuant to 28 U.S.C. § 1334; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good-faith settlement and compromise of the Claims and Causes of Action released by such release; (d) in the best interests of the Debtors and their creditors; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) appropriately narrow in scope given that it expressly excludes, among other things, any Causes of Action arising from any act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct; and (h) a bar to any of the Debtors or their Estates asserting any Debtor Released Claims released pursuant to the Debtor Release.

30. The Debtor Release appropriately offers protection to parties that constructively participated in the Debtors' chapter 11 efforts. Such protections from liability facilitated the participation of the Debtors' stakeholders in the negotiations and compromises that led to the Plan and the Sale Transactions. In addition, the Debtors are not aware of any (a) significant potential claims that are being released or (b) pending litigation that would be discontinued as a result of the Debtor Release.

31. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

32. **Exculpation**. The exculpation provisions contained in Article X.D of the Plan are appropriately tailored to the circumstances of these Chapter 11 Cases and are appropriate under applicable law, including *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022), because

they are supported by proper evidence, proposed in good faith, formulated following extensive good-faith, arm's-length negotiations with key constituents, and appropriately limited in scope. The Exculpated Parties reasonably relied upon the exculpation provisions as a material inducement to engage in postpetition negotiations with the Debtors that culminated in the Plan and all settlements and compromises therein that maximize value for the Debtors' Estates. The record in these Chapter 11 Cases fully supports the exculpation provisions, which provisions are supported by the DIP Lender and the Committee as appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contain appropriate carve outs for actions determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

33. **Release by Holders of Claims and Interests**. The release of Claims and Causes of Action by Holders of Claims and Interests described in Article X.C of the Plan (the "***Third-Party Release***") constitutes an essential and critical provision of the Plan and formed an integral part of the agreements embodied in the Plan among all parties in interest. The Third-Party Release is: (a) consensual on the part of the Releasing Parties; (b) within the jurisdiction of the Bankruptcy Court pursuant to 28 U.S.C. § 1334; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by such release; (e) in the best interests of the Debtors and their creditors; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) appropriately narrow in scope given that it expressly excludes, among other things, any Causes of Action arising from any act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct; and (i) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

34. Like the Debtor Release, the Third-Party Release and its protections were necessary inducements to the participation of the Debtors' stakeholders in the negotiations and compromises that led to the Plan and the structure thereof. Specifically, the Released Parties, individually and collectively, made significant contributions to the Chapter 11 Cases, including compromising Claims and accepting diminished recoveries, permitting the use of encumbered assets and cash collateral during these Chapter 11 Cases, providing liquidity through the DIP Credit Agreement that funded these Chapter 11 Cases, negotiating and supporting the Plan and the Sale Transactions, negotiating consensual resolutions of various disputes, and otherwise actively supporting the Debtors' chapter 11 objectives. The Third-Party Release, therefore, appropriately offers protection to parties who actively and constructively participated in and contributed to the Plan and without whom the Sale Transactions could not have been achieved. In addition, the Debtors are not aware of any (a) significant potential claims that are being released or (b) pending litigation that would be discontinued as a result of the Third-Party Release.

35. The scope of the Third-Party Release in the Plan is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third-Party Release and, to the extent provided under the Plan, the opportunity to opt out of or object to the Third-Party Release, as applicable. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates, the consensual nature of the Third-Party Release, and the critical nature of the Third-Party Release to the Plan, the Third-Party Release is appropriate.

36. **Injunction**. The injunction provision set forth in Article X.E of the Plan is narrowly tailored and necessary to implement the terms of the Plan, including the release and exculpation provisions.

37. Each of the release, exculpation and injunction provisions set forth in the Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interest of the Debtors, their Estates, and the Holders of Claims and Interests; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in these Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, and other applicable provisions in the Bankruptcy Code. The record of the Combined Hearing and these Chapter 11 Cases is sufficient to support the release, exculpation, and injunction provisions contained in Article X of the Plan.

38. **Preservation of Rights of Action**. Article V.M of the Plan appropriately provides that all Retained Causes of Action shall be conveyed to the Liquidating Trust with the Liquidating Trustee appointed as the representative of the Debtors' Estates with respect to the Retained Causes of Action. In addition, the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Retained Causes of Action that the Liquidating Trust may retain. All parties in interest received adequate notice with respect to such Retained Causes of Action. The provisions regarding the Retained Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests. For the avoidance of doubt, except with respect to the Retained Causes of Action and as otherwise provided in the Plan, all Claims and Causes of Action released or exculpated under the Plan and/or released and/or waived pursuant to the DIP Order, including, but not limited to those released in paragraph 5 of the DIP Order, will not be retained by the Debtors, the Wind-Down Debtors, or the Liquidating Trust.

39. The provisions regarding Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

*iii. Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code*

40. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1125, and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019. As a result thereof, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

**N. Section 1129(a)(3)—Proposal of Plan in Good Faith**

41. The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders, and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Bankruptcy Court examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The good faith of each of the entities who negotiated the Plan is evident from the facts and record of these Chapter 11 Cases and the record of the Combined Hearing and other proceedings held in these Chapter 11 Cases. The Plan is the result of extensive, good-faith, and arm's-length negotiations among the Debtors and their principal constituencies, including for the avoidance of doubt, each of the Released Parties and Exculpated Parties and each of their respective Affiliates, agents, Representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys, each of whom shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code. The Plan itself, and the process leading to its formulation, provide independent evidence of the good faith of the entities who negotiated the Plan, serve the public interest, and assure fair treatment of Holders of Claims and Interests. The transactions

contemplated by the Plan are proposed in good faith, are in the best interests of the Debtors' Estates, and will serve to maximize value for all stakeholders. Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, these Chapter 11 Cases were filed, and the Plan was proposed, for the legitimate purpose of allowing the Debtors to complete several value-maximizing sales of their assets and liquidate the remainder of their assets and using the proceeds of such sales and liquidation to satisfy their obligations while maintaining sufficient liquidity and capital resources to conduct the Wind-Down for the benefit of all stakeholders.

42. Based on the record before this Bankruptcy Court in these Chapter 11 Cases, each of (a) the Debtors, (b) the Released Parties, and (c) the Exculpated Parties, as of or after the Petition Date, have acted in good faith and will continue to act in good faith within the meaning of section 1125(e) if they proceed to: (i) consummate the Plan and the agreements, including, without limitation, the agreements contained in the Plan Supplement, and the settlements, transactions and transfers contemplated thereby; and (ii) take the actions authorized and directed by this Combined Order and the Plan.

**O. Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable**

43. The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code. As a result thereof, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

**P. Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders, and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

44. The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. Article V.D.4 of the Plan discloses the identity of the initial Liquidating Trustee

who shall serve as the sole director and sole officer of the Wind-Down Debtors. The Liquidating Trustee is competent, has relevant and valuable business experience, and will oversee the Wind-Down of the Debtors, their Estates, and the Non-Debtor Subsidiaries. Additionally, the Debtors filed the Liquidating Trust Agreement as part of the Plan Supplement. The Liquidating Trustee shall administer the Liquidating Trust Assets and shall, with the consent of the Creditor Representative or the Equityholder Representative, as applicable pursuant to the Joint Creditor/Equityholder Consent/Consultation Rights, pursue, abandon, litigate, or settle the Retained Causes of Action vested in the Liquidating Trust, as appropriate. Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**Q. Section 1129(a)(6)—No Rate Changes**

45. In accordance with section 1129(a)(6) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that the Debtors are not subject to any governmental regulation of any rates. Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable.

**R. Section 1129(a)(7)—Best Interests of Holders of Claims and Interests**

46. The Liquidation Analysis included as **Exhibit C** to the Disclosure Statement and the other evidence related thereto that was proffered or adduced at or prior to the Combined Hearing: (a) are reasonable, persuasive, and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Allowed Claim or Existing Equity Interest in each such Class has voted to accept the Plan or will receive under the Plan on account of such Claim or Existing Equity Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

**S. Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes**

47. Classes 1 and 2 are comprised of Unimpaired Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

48. As described in the Voting Report, only Holders of Claims in Class 3 and Holders of Interests in Class 6 were entitled to vote to accept or reject the Plan. Holders of Claims in Class 3 and Class 6 voted to accept the Plan. All other Classes of Claims and Interests were not entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code. All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations.

49. Although the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to all Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to any deemed rejecting Class of Claims, and thus satisfies section 1129(b) of the Bankruptcy Code.

**T. Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

50. Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed DIP Claims are Unimpaired under Article II of the Plan. As a result thereof, the requirements of section 1129(a)(9) of the Bankruptcy Code with respect to such Classes have been satisfied.

**U. Section 1129(a)(10)—Acceptance by At Least One Impaired Class**

51. As set forth in the Voting Report, Classes 3 and 6 have voted to accept the Plan. As such, at least one Class of Claims that is Impaired under the Plan has accepted the Plan at each Debtor, determined without including any acceptance of the Plan by any insider. As a result thereof, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

**V. Section 1129(a)(11)—Feasibility of the Plan**

52. The evidence proffered or adduced at, or prior to, the Combined Hearing in connection with the feasibility of the Plan is reasonable, persuasive and credible. The Plan provides for the distribution of the proceeds from the sale of substantially all of the Debtors' assets in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. Any assets remaining in the Debtors' Estates as of the Effective Date will vest (a) in the Wind-Down Debtors, for the administration, liquidation, and distribution by the Liquidating Trustee, in accordance with the Plan, or (b) in the Liquidating Trust for the administration, liquidation, and distribution by the Liquidating Trustee, in accordance with the Liquidating Trust Agreement. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

**W. Section 1129(a)(12)—Payment of Bankruptcy Fees**

53. The Plan provides that each of the Debtors (or the Disbursing Agent on behalf of each of the Debtors or the Liquidating Trustee) shall pay all fees payable under section 1930 of title 28, United States Code on and after the Effective Date until the entry of a final decree in each Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed. As a result thereof, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

**X. Section 1129(a)(13)—Retiree Benefits**

54. Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. The Debtors do not have obligations to pay retiree benefits and, therefore, section 1129(a)(13) of the Bankruptcy Code, to the extent applicable to the Debtors, is satisfied.

**Y. Sections 1129(a)(14), (15), and (16)—Domestic Support Obligations; Unsecured Claims Against Individual Debtors; Transfers by Nonprofit Organizations**

55. None of the Debtors have domestic support obligations, are individuals, or are nonprofit organizations. Therefore, sections 1129(a)(14), (15), and (16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**Z. Section 1129(b)—"Cram Down" Requirements**

56. The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that not all Classes voted to accept the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to each Impaired Class that did not vote to accept the Plan. The Plan has been proposed in good faith, is reasonable, and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims or Interests in Impaired Classes that did not vote to accept the Plan. Third, the Plan does not discriminate unfairly with respect to Impaired Classes that did not vote to accept the Plan because similarly situated Holders will receive substantially similar treatment on account of their Claims or Interests in such class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**AA. Section 1129(c)—Only One Plan**

57. Other than the Plan (including any previous versions thereof), which Plan constitutes a separate chapter 11 plan for each of the Debtors, no other plan has been filed in these

Chapter 11 Cases. As a result thereof, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**BB. Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Securities Law**

58. No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. As a result thereof, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**CC. Satisfaction of Confirmation Requirements**

59. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**DD. Rejection of Executory Contracts and Unexpired Leases**

60. Each rejection of an Executory Contract or Unexpired Lease pursuant to Article VI of the Plan shall be legal, valid, and binding upon the applicable Debtor and all non-Debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such rejection had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered prior to the Effective Date under section 365 of the Bankruptcy Code.

**EE. Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

61. Without limiting or modifying the rights of the Debtors, the Committee, and the DIP Lender under Article IX.C of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**FF. Implementation**

62. All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement and all other relevant and necessary documents, have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The Debtors and other parties in interest have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been and are continuing to be negotiated in good faith, at arm's length, are fair and reasonable, and are appropriate. The Debtors and the Liquidating Trustee, as applicable, including their respective officers, are authorized, without any further notice to or action, order, or approval of the Bankruptcy Court, to finalize and execute and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan so long as such documents are consistent with the Plan.

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A. Final Approval of the Disclosure Statement**

63. The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable nonbankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in Section 1125(a)(1) and used in Section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is approved in all respects on a final basis. All objections, statements, or reservations of rights in respect of the Disclosure Statement that have

not been withdrawn, waived, settled, or otherwise resolved before the Combined Hearing are hereby overruled on the merits and denied.

## A. Confirmation of the Plan

64. The Plan, a copy of which is attached hereto as **Exhibit A**, as may be amended by this Combined Order with the consent of the DIP Lender and the Committee, is confirmed pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, the documents contained in the Plan Supplement, and any other documents filed in connection with the Plan and/or executed or to be executed to effectuate, implement or consummate the transactions contemplated by the Plan, and all amendments and modifications thereof made in accordance with the Plan and this Combined Order, are hereby approved by this Combined Order; *provided* that the Debtors, with the consent of the Committee, may make modifications to the Plan prior to the Effective Date subject to the limitations and consents set forth in Article XII.D of the Plan and further described herein.

65. Any and all objections to confirmation of the Plan that have not been withdrawn or resolved prior to the Combined Hearing are hereby overruled, except to the extent sustained by the Bankruptcy Court on the record at the Combined Hearing.

66. The documents contained in the Plan Supplement are integral to the Plan and are approved by the Bankruptcy Court and the Debtors are authorized to take all actions required under the Plan and the Plan Supplement documents to effectuate the Plan and consummate the transactions contemplated thereby.

67. The terms of the Plan and the Plan Supplement are incorporated herein by reference and are an integral part of this Combined Order. The terms of the Plan, the Plan Supplement, and all other relevant and necessary documents shall be valid, binding and enforceable in accordance with their terms as of the Effective Date, and in each case without need for execution by any party

thereto other than the Wind-Down Debtors. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Combined Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

68. The compromises, settlements, releases, exculpations, and injunctions set forth in Article X of the Plan are approved, and will be effective immediately and binding on the Effective Date.

69. The Debtors shall cause to be served a notice of the entry of this Combined Order and occurrence of the Effective Date, substantially in form attached hereto as **Exhibit B** (the "***Confirmation Notice***"), on all parties served with the Combined Hearing Notice as soon as reasonably practicable after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The Debtors shall cause the Confirmation Notice to be posted on the website of these Chapter 11 Cases: https://cases.ra.kroll.com/DGA. Such service in the time and manner set forth herein will provide good, adequate, and sufficient notice under the circumstances, and shall be deemed to comply with Bankruptcy Rules 2002(a)(7), 2002(f)(3) and (f)(7), 2002(1), 3002(c)(4), and 3020(c)(2).

## C. Immediate Binding Effect

70. Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, from and after the entry of this Combined Order and Upon the occurrence of the Effective Date, the terms of the Plan, and the documents and instruments contained in the Plan Supplement and this Combined Order shall be deemed immediately effective, enforceable, and binding upon: (a) the

Debtors; (b) any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected, did not vote, or are deemed to have accepted or rejected the Plan); (c) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors; (d) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan; and (e) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

**D. Plan Classification Controlling**

71. The terms of the Plan shall govern the classification of Claims and Interests for purposes of the Distributions to be made thereunder. The classifications and amounts set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification or amounts of such Claims or Interests under the Plan for Distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification or amount of such Claim or Interest under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**P. General Settlement of Claims**

72. The Plan is a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.

73. The entry of this Combined Order constitutes this Bankruptcy Court's approval of the settlements embodied in the Plan, as well as a finding by this Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims

and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein and in the Plan are nonseverable from each other and from all other terms of the Plan. In accordance with, and subject to the provisions of the Plan (including the consent rights thereunder), pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of this Bankruptcy Court, after the Effective Date, the Liquidating Trustee may (a) compromise and settle any Claims against, and Interests in, the Debtors and their Estates, and (b) subject to the Liquidating Trust Agreement, including the Joint Creditor/Equityholder Consent/Consultation Rights, compromise and settle Retained Causes of Action against other Persons or Entities.

74. Certain Claims and Causes of Action may exist between one or more of the Debtors and one or more of their Affiliates, which Claims and Causes of Action have been settled, and such settlement is reflected in the treatment of the Intercompany Claims and the Claims against, and Interests, in each Debtor entity. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of such Claims and Causes of Action pursuant to Bankruptcy Rule 9019.

75. The provisions of the settlements embodied in the Plan reflect a good-faith compromise and settlement among the Debtors, the DIP Lender, the Committee, and the Holders of Existing Equity Interests of all Claims, Causes of Action, Interests, and controversies among such parties, including all potential Claims, Causes of Action, Interests, and controversies between the Debtors (including, but not limited to, the Parent, but excluding IG Design Group plc and its current and former officers in their capacities as such, and regardless of whether such interests are held directly or indirectly), the DIP Lender, the Committee, and the Holders of Existing Equity Interests, and are in consideration of the value provided to the Estates by the DIP Lender, the

Committee, and the Holders of Existing Equity Interests pursuant to the Plan Settlements. The Plan shall be deemed a motion to approve the Plan Settlements as a good-faith compromise and settlement of all of the Claims, Interests, Causes of Action and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Entry of this Combined Order constitutes this Bankruptcy Court's approval of the Plan Settlements, as well as a finding by this Bankruptcy Court that the Plan Settlements are in the best interests of the Debtors, their Estates, and holders of Claims and Interests and are fair, equitable, and reasonable.

**F. Treatment of Executory Contracts and Unexpired Leases**

76. The rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases as set forth in Article VI of the Plan is hereby authorized. Except as otherwise set forth in the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date without the need for any further action or consents that may otherwise be required under applicable non-bankruptcy law.

77. Any Cure Claim shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected in the appliable cure notice, in Cash on the Effective Date, subject to the limitations described in Article VI.D of the Plan. Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or proposed Cure Claim must be filed, served, and actually received by the Debtors *within* seven (7) days of the service of the applicable notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have consented to assumption of the applicable Executory Contract or Unexpired Lease, notwithstanding any

provision thereof that purports to (a) prohibit, restrict, or condition the assignment of such Executory Contract or Unexpired Lease; (b) terminate or modify, or permit the termination or modification of, an Executory Contract or Unexpired Lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such Executory Contract or Unexpired Lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (c) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor under such Executory Contract or Unexpired Lease; or (d) create or impose a Lien upon any property or asset of any Debtor, Wind-Down Debtor, or the Liquidating Trust (as applicable). Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contract or Unexpired Lease that fail to object to the proposed assumption in accordance with the terms set forth in Article VI.D of the Plan shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumptions (including with respect to any Cure Claims or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

**G. Establishment of the Liquidating Trust and Vesting of the Liquidating Trust Assets**

78. On the Effective Date, the Debtors shall take any and all actions as may be necessary or appropriate to establish the Liquidating Trust and, except as otherwise provided in the Plan, to cause the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust. Upon the Effective Date, the Liquidating Trust shall be vested with all right, title, and interest in the Liquidating Trust Assets, and such property shall become the property of the Liquidating Trust free and clear of all Claims, Liens, charges, other encumbrances, and interests.

79. The proceeds of the Liquidating Trust Assets shall be held in trust by the Liquidating Trust and shall not be considered property of the Liquidating Trustee or of any

Debtor's Estate. The Liquidating Trustee shall be obligated to distribute the Liquidating Trust Assets and/or the proceeds thereof to the Liquidating Trust Beneficiaries until the earlier of (a) such beneficiaries being repaid in full and (b) the Liquidating Trust Assets being exhausted or otherwise depleted; *provided* that the Liquidating Trust Assets may be used by the Liquidating Trustee to fund the expenses of the Liquidating Trust as determined by the Liquidating Trustee in its sole discretion, subject to Article V.D.7 of the Plan and Article IV.7 of the Liquidating Trust Agreement.

**G. Wind-Down**

80. On and after the Effective Date, the Wind-Down Debtors, through the Liquidating Trustee, shall (a) continue in existence for purposes of (i) executing and completing the Wind-Down of each Debtor and Non-Debtor Subsidiary as expeditiously as reasonably possible, (ii) resolving Disputed Claims as provided hereunder, (iii) making Distributions on account of Allowed Claims, (iv) filing appropriate tax returns, (v) complying with their continuing obligations under the applicable Sale Transaction Documentation, and (vi) administering the Plan in an efficacious manner; and (b) thereafter liquidate and dissolve as set forth in the Plan, the Liquidating Trust Agreement, and this Combined Order.

81. The Liquidating Trustee shall have the power and authority, and shall be required to exercise such power and authority, in lieu of the board of directors or similar governing body of any of the direct and indirect Non-Debtor Subsidiaries, to take any action necessary to complete the Wind-Down, including filing a certificate of dissolution or similar documents for each Debtor and Non-Debtor Subsidiary, together with all other necessary corporate and company documents, to effect the dissolution of such Entities under the applicable laws of the jurisdiction in which such Entities were formed in accordance with the Plan, the Liquidating Trust Agreement, and this

Combined Order. The Liquidating Trustee shall cooperate and collaborate with the Creditor Representative and the Equityholder Representative to effectuate and complete the Wind-Down.

82. On the Effective Date, the Debtors shall fund the Wind-Down Reserve in the amount of the Wind-Down Budget, which shall be used in accordance with the terms of the Wind-Down Budget. Any Wind-Down Amount in excess of the Wind-Down Budget shall be paid by the Liquidating Trustee from Distributable Proceeds. Any remaining Cash held by the Debtors after making all of the disbursements contemplated by the Wind-Down Budget and completion of the Wind-Down shall constitute Distributable Proceeds and promptly be distributed in accordance with the Plan.

**H. DIP Claims**

83. In accordance with Article II.C of the Plan, all DIP Claims are Allowed under the Plan in an amount equal to the aggregate amount of the DIP Obligations outstanding at the time of payment, as set forth in a payoff letter provided by the DIP Lender at the time of indefeasible payment in full in Cash, including (a) the principal amount outstanding under the DIP Loans on such date, (b) all interest accrued and unpaid thereon through and including the date of payment, (c) all accrued and unpaid fees, discounts, expenses, costs, and indemnification obligations payable under the DIP Documents, and (d) any and all other DIP Obligations. Notwithstanding anything to the contrary in the Plan or this Combined Order, the provisions of the DIP Documents that expressly survive termination or maturity of the DIP Loans shall continue in full force and effect after the Effective Date in accordance with the terms thereof.

**P. Cancellation of Notes, Instruments and Existing Equity Interests**

84. On the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents evidencing or creating any prepetition Claim or Interest shall be cancelled and of no further force and effect, except that each

of the foregoing shall continue in effect solely to the extent necessary to: (a) allow Holders of such Claims or Interests to receive Distributions under the Plan; (b) allow the Wind-Down Debtors and the Liquidating Trustee, as applicable, to make post-Effective Date Distributions or take such other actions pursuant to the Plan on account of such Claims or Interests; (c) allow Holders of Claims or Interests to retain their respective rights and obligations vis-à-vis other Holders of Claims or Interests pursuant to any such applicable document or instrument; (d) preserve any rights of the DIP Lender to payment of fees, expenses, and indemnification obligations against money or property distributed to the lenders under the DIP Documents; (e) preserve the rights of the DIP Lender to appear and be heard in these Chapter 11 Cases to the extent such rights exist; and (f) preserve the right of Holders of Existing Equity Interests in Class 6 to receive any Equity Distributable Proceeds.

**P. Release of Liens**

85. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and cancelled, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their Estates.

**L. Corporate Action**

86. Upon the Effective Date, by virtue of entry of this Combined Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified

without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or their Estates.

87. On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of, and on behalf of, the Debtors, the Wind-Down Debtors, or their Non-Debtor Subsidiaries, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**M. Settlement of Claims and Debtor Release**

88. The provisions set forth in Article X.A and Article X.B of the Plan are hereby approved in their entirety. The entry of this Combined Order shall constitute the Bankruptcy Court's approval of the integrated and global good-faith compromise, resolution, or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such global compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

**N. Third-Party Release**

89. The provisions of Article X.C of the Plan are hereby approved in their entirety. Entry of this Combined Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release

is: (a) consensual on the part of the Releasing Parties; (b) essential to the Confirmation of the Plan; (c) given in exchange for good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Third-Party Released Claim.

**O. Exculpation and Injunction**

90. The provisions of Article X.D and Article X.E of the Plan are hereby approved in their entirety. No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Wind-Down Debtors, the Liquidating Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Released or Exculpated Claim or Cause of Action as applicable, without this Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim or Cause of Action of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Wind-Down Debtor, Exculpated Party, or Released Party, as applicable. At the hearing for this Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim or Cause of Action of any kind, this Bankruptcy Court may, or shall if any Debtor, Wind-Down Debtor, Exculpated Party, Released Party, Liquidating Trustee, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with this Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as made

applicable to these Chapter 11 Cases through Federal Rules of Bankruptcy Procedure 7008 and 7009), which this Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from this Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. This Bankruptcy Court reserves jurisdiction to adjudicate any such Claims and Causes of Action to the maximum extent provided by applicable law.

**P. Administrative Claims Bar Date**

91. Except as otherwise provided in the Plan and section 503(b)(1)(D) of the Bankruptcy Code and except with respect to Independent Director Fee Claims, unless previously filed or paid, requests for payment of Administrative Claims must be filed and served on the Debtors or the Liquidating Trustee, as applicable, pursuant to the procedures specified in the Plan, in this Combined Order, the notice of entry of this Combined Order, the notice of occurrence of the Effective Date, or any other order entered by the Bankruptcy Court (as applicable) no later than the Administrative Claims Bar Date; *provided* that the foregoing shall not apply to either (a) the Holders of Claims under section 503(b)(1)(D) of the Bankruptcy Code or (b) the Bankruptcy Court or the U.S. Trustee (as defined in the Solicitation Procedures Order) as Holders of Administrative Claims. Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims that do not file and serve such request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors and their respective Estates and property, and such Administrative Claims shall be deemed satisfied as of the Effective Date. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article X.E of the Plan. Nothing in Article II.A of

the Plan shall limit, alter, or impair the terms and conditions of the Claims Bar Date order with respect to the Claims Bar Date for filing administrative expenses arising under section 503(b)(9) of the Bankruptcy Code. Objections to requests for payment of Administrative Claims must be filed and served by the Administrative Claims Objection Deadline on (a) the requesting party, and (b) the Liquidating Trustee, if filed by any party other than the Liquidating Trustee.

**Q. Deadline to File Professional Fee Claims**

92. As provided in Article II.A.2 of the Plan, all Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims (a) must file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, and (b) must be paid in full from the Carve-Out Account in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Professional Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidating Trustee. For the avoidance of doubt, the Liquidating Trustee is authorized to pay Professional Fee Claims incurred after the Effective Date in the ordinary course from the Carve-Out Account without approval from the Bankruptcy Court. Objections to any final requests for payment of Professional Fee Claims must be filed no later than twenty-one (21) days from the date of the filing of such final requests for payment of Professional Fee Claims. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

**R. Deadline to File Rejection Claims**

93. As provided in Article VI.E of the Plan, all claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan must be filed with the Claims and

Noticing Agent and served upon the Liquidating Trustee and counsel for the Debtors, as applicable, within thirty (30) days after the occurrence of the Effective Date in accordance with the instructions and procedures set forth in the Plan; *provided* that the foregoing deadline shall apply only to Executory Contracts or Unexpired Leases that are rejected automatically by operation of Article VI.A of the Plan, and the deadline for filing any rejection damage Claims relating to any Executory Contracts or Unexpired Leases rejected pursuant to a separate order of the Bankruptcy Court shall be the applicable deadline under such order or the Claims Bar Date Order, as applicable. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that becomes an Allowed Claim shall be classified and treated as a General Unsecured Claim against the applicable Debtor.

**R. Exemption from Certain Transfer Taxes**

94. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer pursuant to, in contemplation of, or in connection with the Plan, including pursuant to (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in connection with the transactions contemplated in the Plan; (b) the creation, modification, consolidation, termination, refinancing, release or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral security for any or all of any indebtedness; (e) any sale by any Debtor consummated post-Confirmation, and any other transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan and the transactions contemplated thereby, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be

subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales tax, use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or fee, or other similar tax, fee or governmental assessment, and the appropriate state or local government officials, recording officers or agents (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code and shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

**S. Insurance Policies**

95. After the Effective Date, all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies and any such "tail policy" for the full term of such D&O Liability Insurance Policies, subject to and in accordance with the terms and conditions of such policies in all respects and the terms of the Plan. Notwithstanding anything to the contrary in the Plan or this Combined Order, to the extent any Insurance Policies have not already been assumed and assigned to the Purchasers pursuant to the applicable Sale Orders or Sale Transaction Documentation, (a) on the Effective Date, the Debtors shall be deemed to have assumed all such Insurance Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code identified on the Assumed Executory Contracts and Unexpired Lease Schedule, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; (b) neither Confirmation nor Consummation of the Plan shall alter, impair or otherwise modify the terms and conditions of any such Insurance Policy or the coverage provided pursuant thereto (including any indemnity obligations assumed by the foregoing assumption of Insurance Policies, and each such

indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed) except that on and after the Effective Date, all Insurance Policies not transferred to the Purchasers pursuant to the applicable Sale Orders or the Sale Transaction Documentation shall vest unaltered and in their entireties in the Wind-Down Debtors or the Liquidating Trust, as applicable, which shall succeed to all of rights and obligations and shall become and remain liable in full for all of the Debtors' obligations under such Insurance Policies, regardless of whether such obligations arise before or after the Effective Date and without the need for an Insurer to file a Proof of Claim or Administrative Claim or to object to any Cure Notice; (c) for the avoidance of doubt, neither Confirmation nor Consummation of the Plan, nor the vesting of the Insurance Policies in the Wind-Down Debtors and their Estates or the Liquidating Trust, as applicable, shall impair, alter, modify or otherwise affect (i) any parties' rights to coverage thereunder, including in respect of any claims pending as of the Effective Date or pursued or made thereafter, or (ii) any available defenses of the Debtors or the Liquidating Trustee or any Insurer under the Insurance Policies; and (d) on the Effective Date, the automatic stay in Bankruptcy Code section 362(a) and the injunctions set forth in Article X of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) without altering clause (ii) and sub-clause (II) hereof, claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims solely as against the proceeds of the applicable Insurance Policies *provided*, that, such claimants with valid workers' compensation claims or direct action claims against an Insurer must agree to waive any Claims against any of the Debtors, Wind-Down Debtors, or the Liquidating Trust; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the

Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article X of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff), in each instance to the extent permissible under applicable non-bankruptcy law and in accordance with the terms of such Insurance Policies

**T. Indemnification**

96. The Indemnification Obligations shall not be discharged or impaired by Confirmation or Consummation of the Plan and shall remain intact, irrevocable and shall survive the Effective Date on terms no less favorable to, but not greater than, such officers, directors, members, managers, agents, or employees than the indemnification provision in place prior to the Effective Date. All such Indemnification Obligations shall be deemed and treated as Executory Contracts to be assumed by the Wind-Down Debtors and assigned to the Liquidating Trust under the Plan on the Effective Date. Additionally, on the Effective Date, the DIP Lender shall receive Cash equal to the Indemnification Reserve Amount to be held in the Indemnification Reserve Account by the DIP Lender to satisfy any and all remaining obligations of the Debtors to the DIP Lender under the DIP Credit Agreement from the Effective Date through and including the Indemnification Reserve Termination Date. To the extent that such funds are not utilized in full by the DIP Lender for such purpose prior to the Indemnification Reserve Termination Date, any such remaining funds (along with any accrued interest) shall constitute Distributable Proceeds and be returned to the Liquidating Trustee for Distribution in accordance with the Plan. The DIP Lender shall provide a summary notice to the Liquidating Trustee, upon utilization of any portion

of the Indemnification Reserve Amount, the amount utilized and the circumstances under which such amount has been used.

**U. Preservation of Causes of Action**

97. Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan, pursuant to a Sale Transaction, or by a Bankruptcy Court order, including the Avoidance Actions waived pursuant to paragraph 5 of the DIP Order, the Debtors expressly reserve and preserve the Retained Causes of Action. On and after the Effective Date, the Liquidating Trustee, with the consent of the Creditor Representative or the Equityholder Representative, subject to the Joint Creditor/Equityholder Consent/Consultation Rights, may pursue the Retained Causes of Action in its sole discretion, subject to Article V.D.5 of the Plan. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors, with the consent of the Committee, and on and after the Effective Date, the Liquidating Trustee, with the consent of the Creditor Representative, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment the Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party, aside from the consent rights provided in this sentence, or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything

contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself and the occurrence of the Effective Date. All attorney-client privilege, work-product privilege, common interest privilege, or other privilege or immunity attaching to any of the Debtors' documents or communications (in any form, including, without limitation, written, electronic, or oral) shall be transferred to and shall vest in the Liquidating Trust. The Liquidating Trust and the Liquidating Trustee is hereby vested with the Debtors' and the Committee's respective rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004, and to seek turnover of the Debtors' property, including the Debtors' books and records, under section 542 or otherwise.

**V. Non-Severability of Plan Provisions Upon Confirmation**

98. This Combined Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted, is valid and enforceable pursuant to its terms.

**W. Post-Confirmation Modifications**

99. Without need for further order or authorization of the Bankruptcy Court, the Debtors are authorized to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein). Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to materially alter, amend, or modify the Plan with respect to such Debtors, one or more times, after Confirmation, and, to the extent necessary or required under section 1127 of the Bankruptcy Code and/or Bankruptcy Rule 3019, may initiate

proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Combined Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XII.D of the Plan (subject to any applicable consents or consultation rights set forth therein).

**X. Governmental Agencies**

100. Nothing in this Combined Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in this Combined Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in this Combined Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liability arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

**Y. Conflicts**

101. To the extent that any provision of the Disclosure Statement, the Liquidating Trust Agreement, or any order (other than this Combined Order or the Sale Orders) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing),

conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided* that, in the event of any conflict with any provision of the Plan and/or this Combined Order, this Combined Order shall govern.

**Z. Dissolution of the Committee**

102. On the Effective Date, the current and former members of the Committee, and their respective officers, employees, counsel, advisors and agents, will be released from all further authority, duties, responsibilities and obligations related to, and arising from, and in connection with, the Chapter 11 Cases and the Committee will dissolve; *provided*, *however*, that following the Effective Date, the Committee will continue in existence and have standing and a right to be heard for the following limited purposes (i) pursuing Professional Fee Claims and final fee applications filed pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with Article II.A.2 of the Plan and (ii) participating in any appeals of this Combined Order. Following the completion of the Committee's remaining duties set forth above, the Committee will be dissolved, and the retention or employment of the Committee's respective attorneys, accountants and other agents will terminate without further notice to, or action by, any Entity.

103. Notwithstanding anything else to the contrary in the Plan or this Combined Order, in addition to all other amounts included for purposes of calculating the Carve-Out Amount to be held in the Carve-Out Account pursuant to the Plan, the Carve-Out Amount also shall include $100,000 on account of fees and expenses that may be incurred after the Effective Date by the Professionals retained by the Committee during the Chapter 11 Cases in connection with (a) monitoring the Claims reconciliation process and responding to inquiries from Holders of Claims in Class 3, (b) pursuing Professional Fee Claims and final fee applications filed pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with Article II.A.2 of the Plan, and (c) participating in any appeals of this Combined Order, and any such Professional Fee Claims

incurred after the Effective Date shall be paid by the Liquidating Trustee in the ordinary course from the Carve-Out Account without need for Bankruptcy Court approval.

**AA. Reservation of Rights**

104. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**BB. Authorization to Consummate**

105. The Debtors are authorized to consummate the Plan at any time after the entry of this Combined Order subject to the satisfaction or waiver (with the consent of the applicable parties and in accordance with Article IX.B of the Plan) of the conditions precedent to the Effective Date set forth in Article IX.A of the Plan.

**CC. Substantial Consummation**

106. Substantial consummation of the Plan under sections 1101(2) and 1127(b) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**DD. Reversal**

107. If any or all of the provisions of this Combined Order are hereafter reversed, modified or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' or Wind-Down Debtors' and Liquidating Trustee's receipt of written notice of such order, as applicable. Notwithstanding any such reversal, modification or vacatur of this Combined Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Combined Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the

provisions of this Combined Order and the Plan and all related documents or any amendments or modifications thereto.

**EE. Retention of Jurisdiction**

108. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Combined Order and the occurrence of the Effective Date, and in addition to the matters over which the Bankruptcy Court shall have retained jurisdiction pursuant to the Sale Orders, the Bankruptcy Court will, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, as set forth in Article XI of the Plan.

**FF. Terms of Injunctions and Stays**

109. Unless otherwise provided in the Plan or in this Combined Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Combined Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan and this Combined Order shall remain in full force and effect in accordance with their terms.

**GG. Stay of Confirmation**

110. Any applicable stay of effectiveness provided in Bankruptcy Rules 3020(e), 6004(g), 6004(h), 6006(d), and 7062, or otherwise shall not apply to this Combined Order. This Combined Order shall be effective and enforceable immediately upon its entry. Subject to the occurrence of the Effective Date, the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon any Holder of a Claim against, or Interest in, the Debtors, such Holder's respective heirs, executors, administrators, successors, and assigns (whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has

accepted or voted on the Plan, and whether or not such Holder is entitled to a Distribution under the Plan), all Entities that are party or subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor counterparties to Executory Contracts, Unexpired Leases, and any other prepetition agreements. The Debtors are authorized to consummate the Plan at any time after the entry of this Combined Order, subject to satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article IX of the Plan (subject to any applicable consent and consultation rights set forth therein). Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Supplement, and this Combined Order shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**HH. Missouri Department of Revenue Claims**

111. Notwithstanding anything to the contrary in the Plan or this Combined Order, to the extent the Priority Tax Claims of the Missouri Department of Revenue have not been paid in full prior to the Effective Date, such Claims will be paid either (a) in full on the Effective Date or (b) in equal monthly installments commencing on the Effective Date and continuing over a period ending not later than sixty (60) months after the Petition Date. Each equal monthly payment shall in addition include interest at the statutory interest rate of 8% per annum from the Effective Date.

**II. Texas Comptroller of Public Accounts**

112. Notwithstanding any term in the Plan or this Combined Order to the contrary: (i) the setoff rights of the Texas Comptroller of Public Accounts (the "***Texas Comptroller***") are preserved under section 553 of the Bankruptcy Code; (ii) pursuant to section 503(b)(1)(D) of the Bankruptcy Code, the Texas Comptroller shall not be required to file a request for payment of any amounts coming due to the Texas Comptroller post-petition, and nothing herein shall preclude payment of interest on such amounts; (iii) any and all delinquent tax returns shall be filed with the Texas Comptroller no later than 60 calendar days following entry of this Combined Order,

including but not limited to any final franchise tax returns; (iv) the Texas Comptroller shall be allowed to amend its proofs of claim without leave of court or consent from any other parties for any reason, including to reflect returns received or resolution of audit liabilities or any other tax liabilities owed by the Debtors to the Texas Comptroller; and (v) the Chapter 11 Cases shall have no effect on the Texas Comptroller's rights as to non-Debtor third parties.

113. The Texas Comptroller specifically opts out of the Third-Party Releases and is not a Releasing Party. Any additional tax reporting that may arise, if any, shall be timely filed and paid. If the Debtors have sought a reporting extension for ongoing franchise tax liability, such returns shall be timely filed by the extended due date and paid in full upon the filing of the return. Any ongoing audits shall be timely completed and paid within the confines of section 1129 of the Bankruptcy Code.

114. For the avoidance of doubt, all Priority Tax Claims of the Texas Comptroller shall be treated in accordance with the terms set forth in section 1129(a)(9)(c) of the Bankruptcy Code beginning on the Effective Date. Interest on any Administrative Claim or Priority Tax Claim of the Texas Comptroller shall accrue at the statutory rate of interest pursuant to the Texas Tax Code 111.060. The Texas Comptroller preserves all available bankruptcy and state law remedies, if any, in the event of default of payment on claims as laid out herein above.

**KK. Tennessee Department of Revenue Claims**

115. For the avoidance of doubt, all Priority Tax Claims of the Tennessee Department of Revenue shall be treated in accordance with the terms set forth in section 1129(a)(9)(c)(i) of the Bankruptcy Code and shall include the total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim. Further, the Tennessee Department of Revenue shall not be considered to be a Releasing Party nor a Released Party under the Plan.

**LL. Parry Lift-Stay**

116. Notwithstanding anything to the contrary herein or in the Plan, including Art. X.C, X.D, and X.E of the Plan, Vann Parry shall not be enjoined from prosecuting or otherwise pursuing claims and causes of action against the Debtors or any other parties in the lawsuit styled *Vann Parry v. Paper Magic Group, Inc. et al.*, Case No. 2:25–CV–00814–JJT, currently pending the U.S. District Court for the District of Arizona (the "***Parry Lawsuit***"), or any appeal or remand of the Parry Lawsuit, and the releases and injunctions contained in the Plan are modified to the extent necessary to effectuate the terms of this paragraph; provided that Vann Parry shall only seek to collect any settlement or judgment resulting from the Parry Lawsuit from (a) any and all insurance policies providing coverage for the claims asserted in the Parry Lawsuit (including policy number 583-63-07 issued by National Union Fire Insurance Company of Pittsburgh, PA); (b) funds that may be available under any and all such applicable insurance policies; and/or (c) non-Debtor parties and property outside the Debtors' bankruptcy estates. Any Proof of Claim filed by Vann Parry in these Chapter 11 Cases, and any Claim scheduled to be paid to Vann Parry, is hereby disallowed and expunged in its entirety, and Vann Parry is prohibited from filing any Proofs of Claim or any other request for payment against the Debtors or the Debtors' Estates, including, for the avoidance of doubt, the Wind-Down Debtors, the Liquidating Trust, and any Affiliates or successors of the foregoing.

**KK. Atlantic Specialty Insurance Company Rights**

117. In connection with the execution by one or more of the Debtors of certain general indemnity agreements (collectively, the "***Indemnity Agreements***"), Atlantic Specialty Insurance Company ("***ASIC***") issued certain surety bonds on behalf of the Debtors (collectively, the "***Surety Bonds***" and, each individually, a "***Surety Bond***").

118. Nothing in this Combined Order or the Plan, or any document, agreement or other instrument contemplated by or related to the Plan shall alter, limit, expand, modify, release, waive, or prejudice (i) any rights, remedies and/or defenses of ASIC under or in respect of the Surety Bonds and/or the Indemnity Agreements; (ii) any rights of ASIC in any ASIC collateral, if any; or (iii) any rights of ASIC against any non-Debtor or third party. For the avoidance of doubt, nothing in the Plan, including without limitation, any injunction, exculpation, and release provisions under the Plan shall impair any of ASIC's rights under its Surety Bonds, the Indemnity Agreements and/or in in any of its collateral, including, without limitation, any subrogation and/or priority rights at law or in equity. For the avoidance of doubt, ASIC has opted out of the releases contained in the Plan and shall not be deemed a Releasing Party or a Released Party.

**LL. Assumption of Modified LPC Gateway Lease**

119. Upon the entry of this Combined Order, that certain Lease Agreement between Debtor IG Design Group Americas, Inc. ("***IGDGA***") and CP Logistics Marshall Building 9, LLC dated March 10, 2020 (as amended by that certain First Amendment to the Lease Agreement dated September 4, 2020, the "***LPC Lease***") related to approximately 892,620 rentable square feet of industrial real estate located in Marshall County, Mississippi (the "***Premises***"), and assigned to LPC Gateway, LLC ("***LPC***") pursuant to a series of assignment documents, shall be modified (and thereafter known as the "***Modified LPC Lease***"), such that the definition of "Expiration Date" is deleted in its entirety and the following substituted in its place:

""**Expiration Date**": February 28, 2026."

120. Notwithstanding the foregoing modification, all other terms and conditions of the LPC Lease shall remain in full force and effect in the Modified LPC Lease. Further, the modification of the LPC Lease set forth in this Combined Order shall have no effect on LPC's rights under that certain Guaranty of Lease dated March 10, 2020 (the "***LPC Lease Guaranty***"),

under which Non-debtor IG Design Group, PLC guaranteed IGDGA's obligations under the LPC Lease, and is not intended to relinquish, modify, or diminish any of LPC's rights arising under the LPC Lease Guaranty. This Combined Order authorizes and approves IGDGA's assumption of the Modified LPC Lease, pursuant to sections 365 and 1123 of the Bankruptcy Code, in all respects.

121. In exchange for (a) full satisfaction of all Claims and Causes of Action that LPC may hold against the Debtors or their Estates whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, and such satisfaction of claims against the Debtors will have no effect on the LPC Guaranty, and (b) with the understanding that payment of the below settlement claims or other treatment of these settlement claims in the Plan shall not bar any claims under the LPC Guaranty that may exceed the amount received by LPC pursuant to the Plan and are without prejudice to LPC's rights under the LPC Guaranty, therefore, upon entry of this Combined Order, LPC shall:

(a) hold an Allowed Class 3 General Unsecured Claim in the amount of $4,160,960.76 on account of lease rejection damages based on rent due under the LPC Lease and damages arising from the modification of the Expiration Date effectuated by this Combined Order;

(b) hold an Administrative Claim in an amount to be determined for any damages related to or resulting from IGDGA's obligations to restore the Premises solely to the extent required under Section 10(b) of the Modified LPC Lease ("***Section 10(b)***") that exist at the time that IGDGA surrenders possession of the Premises to LPC; *provided*, that LPC and IGDGA are authorized to enter into, and perform under, any agreements or other documentation necessary or appropriate to the discharge of IGDGA's obligations under Section 10(b) of the Modified LPC Lease; and *provided*, *further*, that any dispute between LPC and Debtors that arises under or is related to the Modified LPC Lease (including any dispute about the

discharge of IGDGA's obligations under Section 10(b)) shall be resolved by this Bankruptcy Court;

(c) receive a $90,000 cash payment on the Effective Date for the total reasonable, documented attorney's fees and expenses paid by LPC in connection with its receipt of legal services in connection with IGDGA's defaults under the LPC Lease and the treatment of the LPC Lease and the Modified LPC Lease in the Chapter 11 Cases;

(d) receive a $363,971.13 cash payment on the Effective Date on account of unpaid rent that became overdue to LPC in 2025 under the LPC Lease;

(e) receive a cash payment of $343,706.98 on or before January 1, 2026, on account of IGDGA's occupation of the Premises in January 2026; and

(f) receive a cash payment of $343,706.98 on or before February 1, 2026, on account of IGDGA's occupation of the Premises in February 2026.

### MM. Treatment of LIT Industrial Partnership Lease

122. Pursuant to section 365 of the Bankruptcy Code, the Lease Agreement, dated as of January 31, 2012, and amended on April 30, 2012, January 2016, and July 19, 2018 (collectively and together with all documentation executed in support thereof,[4] the "***LIT Lease***"), concerning certain industrial space used as a distribution facility of approximately 492,866 rentable square feet located in the Heartland Corporate Center in Shorewood, Illinois (the "***Shorewood Premises***") between Debtor Simplicity Creative Corp. ("***Simplicity***") and LIT Industrial Limited Partnership ("***LIT***") is deemed rejected as of January 31, 2026 (the "***LIT Lease Rejection Effective Date***"). Simplicity shall surrender the Shorewood Premises to LIT on or before the LIT Lease Rejection Effective Date and Simplicity's abandonment of any personal property at the Shorewood Premises is hereby authorized and approved in all respects; *provided*, that upon the written consent of LIT and subject to Simplicity's obligation to continue to pay rent during any such extension period in accordance with the terms of the LIT Lease, the Debtors may extend the LIT Lease Rejection

[4] Such documentation includes that certain Landlord Consent to Assignment and Assumption of Lease effective November 1, 2017.

Effective Date and the effectiveness of the rejection shall be deemed authorized pursuant to this Combined Order as of such date.

123. In exchange for full satisfaction of all Claims and Causes of Action that LIT may hold against the Debtors or their Estates whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, except for obligations created by this Combined Order, upon entry of this Combined Order, LIT shall:

(a) be entitled to receive a rent payment (in accordance with the terms of the LIT Lease) for the Debtors' use and occupancy of the Shorewood Premises in January 2026;

(b) have an Allowed Class 3 General Unsecured Claim against the Debtors in the amount of $2,750,765.76 (the "***LIT Rejection Damages Claim***") on account of damages flowing from the rejection of the LIT Lease.

(c) have an Allowed Class 3 General Unsecured Claim against the Debtors in the amount of $194,972.24 (the "***LIT Prepetition Claim***" and together with the LIT Rejection Damages Claim, the "***LIT Allowed GUC Claim***") on account of all rent obligations arising under the LIT Lease for the month of June 2025;

(d) receive a cash payment of $215,918.40 to be paid within five (5) days of the Effective Date on account of rent obligations arising under the LIT Lease for the month of July 2025; and

(e) receive the Conditional Repair Expense Entitlement (as defined below).

Upon the entry of this Combined Order, the Proofs of Claim filed by LIT and assigned Claim Nos. 590 and 604 as well as the scheduled Claim bearing Schedule No. 6424055 shall be deemed disallowed and expunged in all respects; *provided*, *however*, that LIT shall be permitted to assert

any Claim for administrative expenses (including the Conditional Repair Expense Entitlement) on account of postpetition obligations of the Debtors arising under the LIT Lease and the Debtors reserve all rights to contest, object to, or dispute such Claim or request for payment.

124. Provided that the Debtors or the Liquidating Trustee do not determine in their business judgment that doing so would contravene their respective obligations to maximize the value of the Estates for the benefit of Holders of Claims and Existing Equity Interests, the Debtors are authorized to remove personal property and undertake repair obligations at the Premises consistent with the terms of the LIT Lease prior to surrendering the Premises to LIT. To the extent LIT must undertake additional repairs or restorations in order to restore the Shorewood Premises to the condition set forth under the LIT Lease, within 90 days of the LIT Lease Rejection Effective Date (the "***Claim Assertion Deadline***"), LIT shall be entitled (the "***Conditional Repair Expense Entitlement***") to file a Claim seeking payment on account of the reasonable and documented expenses incurred as of such date in connection with such restoration obligations; *provided*, that with respect to any such asserted Claim: (a) LIT may seek within a subsequent 30 day period additional amounts that have not been liquidated as of the Claim Assertion Deadline without prejudice to its right to request additional time, for cause, upon a motion; and (b) the Debtors retain all rights to contest, object to, or dispute such Claim, request for payment, or proposed extension of time.

125. Upon the entry of this Combined Order, the automatic stay provided by section 362 of the Bankruptcy Code shall be modified to allow LIT to (a) draw down on that certain security deposit in the amount of $100,626.81 provided by Simplicity (the "***LIT Lease Security Deposit***") and (b) market the Shorewood Premises in any way it deems necessary including, but not limited to, showing the interior and exterior of the Shorewood Premises to prospective tenants, placing

signage at the Shorewood Premises, and including the Shorewood Premises in any listing media. Upon the application of the LIT Lease Security Deposit as provided for in this paragraph, the LIT Allowed GUC Claim shall be reduced in the amount of the LIT Lease Security Deposit.

**NN. Final Order**

126. This Combined Order is a Final Order and the period within which an appeal must be filed commences upon the entry hereof.

Signed: December 17, 2025

Christopher Lopez
United States Bankruptcy Judge

# Exhibit A

## Plan

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LION RIBBON TEXAS CORP., *et al.*, | : | Case No. 25-90164 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

# FIRST AMENDED JOINT PLAN OF LIQUIDATION OF LION RIBBON TEXAS CORP. AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE


Ray C. Schrock
Adam S. Ravin
Randall Carl Weber-Levine
Jaclyn F. Kleban
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
adam.ravin@lw.com
randall.weber-levine@lw.com
jaclyn.kleban@lw.com

Caroline A. Reckler
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue
Suite No. 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: caroline.reckler@lw.com

*Counsel for Debtors and Debtors in Possession*


Dated: December 3, 2025

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.ra.kroll.com/DGA. The Debtors' mailing address for the purposes of these cases is 2015 West Front Street, Berwick, PA 18603.

TABLE OF CONTENTS

Page


ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS ........ 2

A. Rules of Interpretation; Computation of Time ........ 2
B. Defined Terms ........ 3

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP CLAIMS ........ 19

A. Unclassified Claims ........ 19
1. Administrative Claims ........ 19
2. Professional Fee Claims ........ 20
3. Statutory Fees ........ 21
B. Priority Tax Claims ........ 22
C. DIP Claims ........ 22

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ........ 22

A. Summary ........ 22
B. Classification and Treatment of Claims ........ 23
1. Class 1 — Other Priority Claims ........ 23
2. Class 2 — Secured Claims ........ 24
3. Class 3 — General Unsecured Claims ........ 24
4. Class 4 — Intercompany Claims ........ 24
5. Class 5 — Intercompany Interests ........ 25
6. Class 6 — Existing Equity Interests ........ 25
C. Special Provision Governing Unimpaired Claims ........ 25
D. Elimination of Vacant Classes ........ 26

ARTICLE IV. ACCEPTANCE OR REJECTION OF THIS PLAN ........ 26

A. Acceptance or Rejection of this Plan ........ 26
1. Presumed Acceptance of Plan ........ 26
2. Voting Classes ........ 26
3. Deemed Rejection of this Plan ........ 26
B. Nonconsensual Confirmation ........ 26
C. Subordinated Claims ........ 26

ARTICLE V. MEANS FOR IMPLEMENTATION OF THIS PLAN ........ 27

A. Transactions Effective as of the Effective Date ........ 27
B. General Settlement of Claims and Interests ........ 27
C. Administrative Consolidation for Voting and Distribution Purposes Only ........ 27

D. The Liquidating Trust .................... 28
1. Purpose of the Liquidating Trust .................... 28
2. The Liquidating Trust Assets .................... 28
3. Establishment of the Liquidating Trust and Vesting of the Liquidating Trust Assets .................... 29
4. Appointment of the Liquidating Trustee .................... 29
5. Responsibilities and Authority .................... 30
6. Compensation of the Liquidating Trustee and Professionals and Consultants .................... 32
7. Consent and Consultation Rights .................... 32
8. Indemnification of the Liquidating Trust Indemnified Parties .................... 33
9. Limitations on the Liquidating Trustee .................... 33
10. U.S. Federal Income Tax Treatment of the Liquidating Trust .................... 34
11. Tax Reporting .................... 35
E. Merger of Debtors; Closing Cases of Debtor Affiliates .................... 36
F. Cancellation of Existing Securities and Agreements .................... 36
G. Corporate Action .................... 37
H. Exemption From Transfer Taxes and Fees .................... 37
I. Effectuating Documents; Further Transactions .................... 37
J. Directors, Managers, and Officers of the Debtors .................... 38
K. Insurance Policies .................... 38
L. Indemnification .................... 39
M. Preservation of Retained Causes of Action .................... 40
N. Closing of the Chapter 11 Cases .................... 40
O. Wind-Down .................... 41
P. Fiduciary Obligations .................... 41

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................... 42

A. Assumption, Assumption and Assignment, or Rejection of Executory Contracts and Unexpired Leases .................... 42
B. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases .................... 42
C. Assumption of the D&O Liability Insurance Policies .................... 43
D. Notice of Assumption, Cure, and Related Payments and Deemed Consent .................... 43
E. Rejection Damages Claims .................... 45
F. Reservation of Rights .................... 45
G. Nonoccurrence of Effective Date .................... 46

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS .................... 46

A. Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions .................... 46
1. Timing and Calculation of Amounts to Be Distributed and Date of Distributions .................... 46
2. Entitlement to Distributions .................... 46

B. Distributions on Account of Claims Allowed After the Effective Date ... 47
1. Payments and Distributions on Disputed Claims ... 47
2. Special Rules for Distributions to Holders of Disputed Claims ... 47
C. Delivery of Distributions and Undeliverable or Unclaimed Distributions ... 47
1. Delivery of Distributions in General ... 47
2. Undeliverable Distributions and Unclaimed Property ... 47
3. Record Date for Distributions ... 48
4. Fractional Distributions ... 48
5. *De Minimis* Distributions ... 48
D. Compliance with Tax Requirement; Allocations; Withholding ... 49
E. Surrender of Cancelled Instruments or Securities ... 50
F. Claims Paid or Payable by Third Parties ... 50
1. Claims Paid by Third Parties ... 50
2. Claims Payable to Third Parties ... 50
3. Applicability of Insurance Policies ... 50
G. Allocation of Plan Distributions between Principal and Interest ... 50

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ... 51

A. Allowance and Disallowance of Claims ... 51
B. Prosecution of Objections to Claims ... 51
C. Estimation of Claims ... 51
D. Disputed Administrative Claims Reserve ... 52
E. Disputed General Unsecured Claims Reserve ... 53
F. Distributions After Allowance ... 53
G. Disallowance of Certain Claims ... 53

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN ... 54

A. Conditions Precedent to Effective Date ... 54
B. Waiver of Conditions ... 55
C. Effect of Non-Occurrence of Conditions to Confirmation or Consummation ... 55
D. Substantial Consummation ... 55

ARTICLE X. RELEASE, EXCULPATION, INJUNCTION AND RELATED PROVISIONS ... 56

A. General ... 56
B. Debtor Release ... 56
C. Release by Holders of Claims and Interests ... 57
D. Exculpation ... 58
E. Permanent Injunction ... 58
F. Setoffs ... 59
G. Release of Liens ... 59

H. Integral Part of Plan ... 59

ARTICLE XI. RETENTION OF JURISDICTION ... 60

ARTICLE XII. MISCELLANEOUS PROVISIONS ... 62

A. Reservation of Rights ... 62
B. Payment of Statutory Fees ... 62
C. Statutory Committee ... 62
D. Modification of Plan ... 63
E. Revocation or Withdrawal of Plan ... 63
F. Successors and Assigns ... 63
G. Further Assurances ... 63
H. Severability ... 64
I. Votes Solicited in Good Faith. ... 64
J. Service of Documents ... 64
K. Governing Law ... 65
L. Tax Reporting and Compliance ... 66
M. Schedules ... 66
N. Conflicts ... 66
O. Entire Agreement ... 66
P. 2002 Notice Parties ... 66

# FIRST AMENDED JOINT PLAN OF LIQUIDATION OF LION RIBBON TEXAS CORP. AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Lion Ribbon Texas Corp., IG Design Group Americas, Inc., and each of the debtors and debtors in possession (each, a "***Debtor***" and, collectively, the "***Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***"), jointly propose the following chapter 11 plan of liquidation (as may be amended, modified or supplemented from time to time in accordance with the terms hereof, this "***Plan***") for the resolution of the outstanding Claims against, and Interests in, each of the Debtors. Capitalized terms used in this Plan, unless otherwise defined, shall have the meanings ascribed to such terms in Article I.B hereof.

Pursuant to six separate Sale Orders entered by the Bankruptcy Court, the Debtors obtained authorization on September 17, 2025 to sell certain of their assets to several Purchasers and the Debtors intend to sell their remaining assets through a separate liquidation process authorized by the Bankruptcy Court in the Disposition Services Order and Location Services Order. As such, this Plan is a liquidating plan that provides for (a) the Distribution of any proceeds from the previously-approved asset sales and the liquidation of any remaining assets, as well as the Distribution of other Cash that the Debtors have on hand on the Effective Date, and (b) the creation of a Liquidating Trust and appointment of a Liquidating Trustee that will administer and liquidate certain property of the Debtors, including the Retained Causes of Action, make certain Distributions, and wind up the Debtors' Estates and remaining business affairs.

Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III hereof shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. Notwithstanding the foregoing, this Plan provides for consolidation of the Debtors solely for purposes of voting, determining whether the Voting Classes have accepted this Plan, confirming this Plan, and the resulting treatment of all Claims, Interests, and Plan Distributions.

Reference is made to the Disclosure Statement (as distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, and historical financial information, and for a summary and analysis of this Plan, the treatment of Claims and Interests provided for herein and certain related matters. There also are other agreements and documents that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Schedules. All such Exhibits and Plan Schedules, which will be filed with the Bankruptcy Court in accordance with the Solicitation Procedures, are incorporated into and are a material part of this Plan as if set forth in full herein. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the terms and conditions set forth in this Plan, the Debtors, in consultation with the Committee and the DIP Lender, reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to it being substantially consummated.

**ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE ACCOMPANYING**

**DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS

### A. *Rules of Interpretation; Computation of Time*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced item will be substantially in that form or substantially on those terms and conditions; (c) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, or other agreement or document will mean as it may be amended, modified or supplemented from time to time; (d) any reference to an Entity as a Holder of a Claim or an Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (f) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, indenture, or other agreement or document entered into in connection with this Plan and except as expressly provided herein, the rights and obligations arising pursuant to this Plan will be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings of Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to this Plan; (j) references to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein will, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection; (k) any capitalized term used herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) references to "shareholders," "directors," and/or "officers" will also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (m) all references to statutes, regulations, orders, rules of courts, and the like will mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) will apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan will occur on a day that is not a Business Day (as defined below), then such transaction will instead occur on the next succeeding Business Day.

B. *Defined Terms*

Unless the context otherwise requires, the following terms will have the following meanings when used in capitalized form herein:

"*Administrative Claim*" means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code other than Professional Fee Claims, including, without limitation: (a) any actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Claims pursuant to section 503(b)(9) of the Bankruptcy Code; (c) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code; (d) Allowed Claims of the Liquidating Agent and Real Estate Liquidator under the Disposition Services Agreement, Disposition Services Side Letter, Location Services Order, and Disposition Services Order, respectively; and (e) Independent Director Fee Claims. Notwithstanding anything to the contrary herein, any determination that an Administrative Claim is an Allowed Administrative Claim is subject to the consent of the Committee and the Creditor Representative, as applicable. The term "Administrative Claims" expressly excludes any alleged Claims that are not required to be paid in full in Cash prior to emergence pursuant to section 1129 of the Bankruptcy Code.

"*Administrative Claims Bar Date*" means the Business Day that is thirty (30) days after the Effective Date, or such other date as approved by Final Order of the Bankruptcy Court, which shall be the deadline to file Administrative Claims.

"*Administrative Claims Objection Deadline*" means the Business Day that is one hundred eighty (180) days after the Effective Date; *provided* that the Administrative Claims Objection Deadline may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee after notice and a hearing.

"*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"*Allowed*" means, all or a portion of any Claim or Interest (a) that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Proof of Claim or proof of Interest has been timely filed as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; (b) that is evidenced by a Proof of Claim or proof of Interest filed by the applicable Claims Bar Date as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (d) that is allowed (i) by a Final Order of the Bankruptcy Court; (ii) by an agreement between the Holder of such Claim or Interest and the Debtors, in consultation with the Committee, prior to the Effective Date, or the Liquidating Trustee, after the Effective Date; or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions under this Plan, a Claim that has been deemed "Allowed" shall not include interest, costs, fees or charges on such

Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code, or as otherwise expressly set forth in this Plan. For the avoidance of doubt, any Claim that relates to obligations that were assumed by a Purchaser pursuant to Sale Transaction Documentation shall not be an Allowed Claim for purposes of this Plan.

"*Asset Purchase Agreement*" means any asset purchase agreement, by and between the Debtors and a Purchaser, attached to a Sale Order as Exhibit A.

"*Assigned Executory Contracts and Unexpired Leases Schedules*" means the schedules of Executory Contracts and Unexpired Leases that have been assumed and assigned to a Purchaser in accordance with any Sale Transaction Documentation, as the same may be amended, modified, or supplemented from time to time.

"*Assumed Liabilities*" has the meaning set forth in any Sale Transaction Documentation (or such other similar term as may be used in any Sale Transaction Documentation).

"*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to this Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, and which shall not include any Executory Contract or Unexpired Lease set forth on the Assigned Executory Contracts and Unexpired Leases Schedules.

"*Avoidance Action*" means any avoidance, recovery, or subordination of Claims or Causes of Action commenced, or that may be commenced, before or after the Effective Date pursuant to sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code or under applicable law, which, for the avoidance of doubt, shall not include any Avoidance Action that has been waived or released, including, but not limited to, those waived in paragraph 5(a)(ii) of the DIP Order.

"*Ballots*" means the ballots accompanying the Disclosure Statement upon which Holders of General Unsecured Claims entitled to vote and Holders of Existing Equity Interests entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan in accordance with this Plan and the Solicitation Procedures, and which must be actually received by the Claims and Noticing Agent on or before the Voting and Objection Deadline.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended from time to time, as applicable to the Chapter 11 Cases.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

"*Business Day*" means any day that is not a Saturday, Sunday, or other day on which banks are required or authorized by law to be closed in New York, New York.

"*Carve-Out*" has the meaning set forth in the DIP Order.

"*Carve-Out Account*" has the meaning set forth in the DIP Order.

"*Carve-Out Amount*" means the aggregate amount sufficient to satisfy the Carve-Out.

"*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

"*Causes of Action*" means any action, Claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law; *provided* that Causes of Action shall not include any causes of action transferred or sold pursuant to any Sale Order or released under the DIP Order including those in paragraph 5(ii) thereto.

"*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates, whether or not asserted or Allowed.

"*Claims and Noticing Agent*" means Kroll Restructuring Administration LLC, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

"*Claims Bar Date*" means the applicable deadline by which Proofs of Claim must be filed under the Claims Bar Date Order.

"*Claims Bar Date Order*" means the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. 257] entered by the Bankruptcy Court on August 5, 2025.

"*Claims Objection Deadline*" means the date that is one hundred eighty (180) days after the Effective Date, which date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee.

"*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

"*Combined Hearing*" means the combined hearing to be held by the Bankruptcy Court to consider (i) final approval of the Disclosure Statement under sections 1125 and 1126(b) of the Bankruptcy Code and (ii) Confirmation of this Plan pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

"*Combined Order*" means the final, non-appealable order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, as such order may be amended, supplemented, or modified from time to time.

"*Committee*" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code pursuant to that certain *Notice of Appointment of Creditors' Committee* filed by the U.S. Trustee on July 22, 2025 [Docket No. 113], as amended by the *United States Trustee's Notice of Reconstitution of the Official Committee of Unsecured Creditors* [Docket No. 178], and as such committee may be further reconstituted from time to time.

"*Committee Location Fee Return*" has the meaning set forth in the Location Services Order.

"*Committee Professionals*" means (i) Lowenstein Sandler LLP; (ii) Orrick, Herrington & Sutcliffe LLP; (iii) Dundon Advisers LLC; and (iv) Foresight Restructuring LLC.

"*Company-Related Matters*" means anything related to the Debtors (including the management, ownership, or operation thereof), the purchase, sale, amendment, or recission of any Claim against, or Interest in, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, any adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Chapter 11 Cases, the DIP Credit Agreement and related documents, the Hilco Transaction, the SPA, the Prepetition Loan Agreement (as defined in the DIP Order) and related documents, the Disposition Services Agreement, the Disposition Services Side Letter, this Plan (including, for the avoidance of doubt, the Plan Supplement), any Disclosure Statement, and any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Combined Order in lieu of such legal opinion), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the Distribution of property under this Plan or any other related agreement or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.

"*Confirmation*" means the entry of the Combined Order on the docket of the Chapter 11 Cases.

"*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Combined Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

"*Consummation*" means the occurrence of the Effective Date of this Plan.

"*Creditor Representative*" means an individual appointed to represent the interests of Holders of General Unsecured Claims after the Effective Date to be selected by the Committee. The initial Creditor Representative shall be Joshua Nahas of Dundon Advisers LLC.

"*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code. For the avoidance of doubt, except as otherwise provided herein, this term shall not apply to any cure amounts attributable to an Executory Contract or Unexpired Lease assumed by any Debtor and assigned to any Purchaser under any Sale Order.

"*Cure Claim*" means the Claim of any counterparty to any Executory Contract or Unexpired Lease, based upon a monetary default, if any, by any Debtor on such Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

"*D&O Liability Insurance Policies*" means, collectively, all insurance policies and related agreements of indemnity for directors', members', trustees' and officers' liability issued or providing coverage at any time to any of the Debtors or their Representatives and all agreements, documents or instruments relating thereto, for any policy period whatsoever.

"*Debtor Release*" means the releases as set forth in Article X.B hereof.

"*Debtor Released Claims*" has the meaning set forth in Article X.B hereof.

"*DIP Claim*" means any Claim held by the DIP Lender derived from or based upon the DIP Credit Agreement or the DIP Order, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, indemnification, other charges arising under or related to the DIP Credit Agreement and any and all other DIP Obligations.

"*DIP Collateral*" has the meaning set forth in the DIP Order.

"*DIP Credit Agreement*" has the meaning set forth in the DIP Order.

"*DIP Documents*" has the meaning set forth in the DIP Order.

"*DIP Lender*" has the meaning set forth in the DIP Order.

"*DIP Lender Advisors*" means Greenberg Traurig, LLP and FRP Advisory Group plc.

"*DIP Loans*" has the meaning set forth in the DIP Order.

"*DIP Obligations*" has the meaning set forth in the DIP Order.

"*DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use of Cash Collateral; (II) Granting Liens and Providing Super-priority Administrative Expense Status; (III) Granting Adequate Protection; (IV) Scheduling a Final Hearing; (V) Modifying Automatic Stay; and (VI) Granting Related Relief* entered by the Bankruptcy Court on August 6, 2025 [Docket No. 267].

"*Disallowed*" means, with respect to any Claim or Interest or portion thereof, any Claim against, or Interest in, the Debtors which: (a) has been disallowed, in whole or part, by a Final Order; (b) has been withdrawn by agreement of the Holder thereof and the Debtors or Liquidating Trustee, as applicable, in whole or in part; (c) has been withdrawn, in whole or in part, by the Holder thereof; (d) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim or a proof of Interest, as applicable, has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code or any Final Order or other applicable law; (e) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim or proof of Interest; (f) is evidenced by a Proof of Claim or a proof of Interest which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court, but as to which such Proof of Claim or proof of Interest was not timely or properly filed; (g) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (h) where the Holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547 (solely with respect to claims against insiders as non-insider trade Claims were waived in paragraph 5 of the DIP Order), 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case, a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"*Disbursing Agent*" means the Liquidating Trustee, or the Entity or Entities, chosen (at any time) by the Liquidating Trustee to make or facilitate Distributions pursuant to this Plan.

"*Disclosure Statement*" means the *Disclosure Statement for Joint Plan of Liquidation of Lion Ribbon Texas Corp. and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (as the same may be amended, supplemented, or modified from time to time), including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

"*Disposition Services Agreement*" has the meaning set forth in the Disposition Services Order.

"*Disposition Services Order*" means the *Final Order (I) Authorizing the Debtors to Continue the Liquidation of Assets Sold in Accordance with the Disposition Services Agreement, with all such Asset Sales to be Free and Clear of all Liens, Claims and Encumbrances; (II) Authorizing the Debtors to Assume the Disposition Services Agreement; (III) Authorizing the*

*Commencement of the Non-Operating Debtor Wind Down; and (IV) Granting Related Relief* entered by the Bankruptcy Court on August 6, 2025 [Docket No. 271].

"*Disposition Services Side Letter*" has the meaning set forth in the Location Services Order.

"*Disputed*" means, with respect to any Claim or Interest, a Claim or Interest that (a) is neither Allowed nor Disallowed under this Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; or (b) any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.

"*Disputed Administrative Claims Reserve*" means the reserve established pursuant to and governed by Article VIII.D hereof.

"*Disputed Claims Reserves*" means the Disputed Administrative Claims Reserve and the Disputed General Unsecured Claims Reserve.

"*Disputed General Unsecured Claims Reserve*" means the reserve established pursuant to and governed by Article VIII.E hereof.

"*Distributable Proceeds*" means, after payment of all Allowed DIP Claims in full and in Cash, all Cash held as of the Effective Date, or generated by the monetization of the DIP Collateral on or after the Effective Date, including, without limitation, the proceeds of any Retained Causes of Action, other than such Cash as is necessary to (i) fund the Carve-Out Account; (ii) pay the Statutory Fees; and (iii) pay any Allowed Administrative Claims of the Liquidating Agent and Real Estate Liquidator under the Disposition Services Agreement, Disposition Services Side Letter, Location Services Order, and Disposition Services Order, respectively; (iv) pay the Allowed Administrative Claims; (v) pay the Allowed Secured Claims; (vi) pay the Allowed Priority Tax Claims; (vii) pay the Allowed Other Priority Claims; (viii) fund the Wind-Down Amount; (ix) satisfy the Committee Location Fee Return; (x) solely to the extent that the Committee Location Fee Return is satisfied, pay the Subordinated Location Sale Fees; and (xi) solely to the extent that funds held in the Carve-Out Account are insufficient to satisfy the Allowed amount of the applicable Professional Fee Claims, pay the remaining balance of such Allowed Professional Fee Claims.

"*Distribution*" means a distribution made or facilitated by the Disbursing Agent pursuant to this Plan which, for the avoidance of doubt, may include a disbursement from the Liquidating Trust.

"*Distribution Date*" means a date or dates, including the Initial Distribution Date, as determined by the Disbursing Agent in accordance with the terms of this Plan, on which the Disbursing Agent makes a Distribution to Holders of Allowed Claims.

"*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims are eligible to receive Distributions under this Plan, which date shall be two (2) Business Days prior to the Effective Date.

"*Effective Date*" means the first Business Day on which all of the conditions specified in Article IX.A hereof have been satisfied or waived pursuant to Article IX.B hereof.

"*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

"*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

"*Equity Distributable Proceeds*" means all Distributable Proceeds, if any, after all Allowed General Unsecured Claims have been satisfied in full.

"*Equityholder Representative*" means a representative for Holders of Existing Equity Interests to be selected by the Parent.

"*Exculpated Parties*" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Independent Director; and (c) the Committee and its members.

"*Exculpation*" means the exculpation provision set forth in Article X.D hereof.

"*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

"*Existing Equity Interests*" means, collectively, (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) or any other equity or ownership interest (including any such interest in a partnership, limited liability company, or other Entity) in any Debtor, and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, earn-out rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, including arrangements or commitments of any character relating to, or whose value is related to or derived from, any such interest or other ownership interest in any Debtor, other than Intercompany Interests.

"*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal

Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

"*General Unsecured Claim*" means any Claim that is not: (a) a general unsecured Claim paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a Professional Fee Claim; (f) an Intercompany Claim; (g) a Subordinated Claim; or (h) a DIP Claim.

"*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"*Hilco Transaction*" means the transactions consummated pursuant to the SPA.

"*Holder*" means a Person or Entity, as applicable, holding a Claim against or an Interest in any of the Debtors.

"*Impaired*" means, with respect to a Claim or Interest, or Class of Claims or Interests, a Claim or Class that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Indemnification Obligations*" has the meaning set forth in Article V.L hereof.

"*Indemnification Reserve Account*" means the escrow account established by the DIP Lender on the Effective Date to hold the Indemnification Reserve Amount.

"*Indemnification Reserve Amount*" means Cash in the amount of $250,000 that shall be placed in an interest-bearing escrow account on the Effective Date to be used for any remaining obligations of the Debtors to the DIP Lender under the DIP Credit Agreement in connection with the Chapter 11 Cases after the Effective Date, but before the Indemnification Reserve Termination Date.

"*Indemnification Reserve Termination Date*" means the date that is one year after the Effective Date or such earlier date upon which the Liquidating Trustee and the DIP Lender shall agree.

"*Independent Director*" means Durc Savini, solely in his capacity as the independent director of IG Design Group Americas, Inc., or his duly appointed director successor.

"*Independent Director Fee Claims*" means all unpaid fees and expenses as of the Effective Date due to the Independent Director pursuant to his director agreement with IG Design Group Americas, Inc.

"*Initial Distribution*" means the first Distribution that the Disbursing Agent makes to Holders of Allowed Claims.

"*Initial Distribution Date*" means the date selected by the Debtors on or as soon as reasonably practicable after the Effective Date on which the Initial Distribution occurs.

"*Insurance Policies*" means all insurance policies and related agreements issued or providing coverage at any time to any of the Debtors or any of their predecessors and all agreements, documents, or instruments relating thereto, including any D&O Liability Insurance Policies.

"*Insurer*" means any non-Debtor company or other Entity that issued or entered into an Insurance Policy (including any third-party administrator) and any respective predecessors and/or Affiliates thereof.

"*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate against a Debtor or an Affiliate of a Debtor.

"*Intercompany Interest*" means, collectively, (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) or any other equity or ownership interest (including any such interest in a partnership, limited liability company, or other Entity) in any Debtor, and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, earn-out rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, including arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor held by an Affiliate of such Debtor, which Affiliate may be another Debtor.

"*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Granting Related Relief* [Docket No. 370].

"*Interests*" means, collectively, Existing Equity Interests and Intercompany Interests.

"*Joint Creditor/Equityholder Consent/Consultation Rights*" has the meaning set forth in Article V.D.7 hereof.

"*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"*Liquidating Agent*" means Hilco Merchant Resources, LLC.

"*Liquidating Trust*" means the liquidating trust established on the Effective Date pursuant to the Liquidating Trust Agreement for the benefit of Holders of Allowed Claims and, after payment in full of Allowed General Unsecured Claims, Holders of Allowed Existing Equity Interests, as provided in this Plan.

"*Liquidating Trustee*" means Durc Savini, solely in his capacity as trustee of the Liquidating Trust, or any successor duly appointed under the Liquidating Trust Agreement.

"*Liquidating Trust Agreement*" means the trust agreement entered into by and among the Debtors and the Liquidating Trustee that establishes and governs the Liquidating Trust, the mechanism for effectuating and completing the Wind-Down, the Liquidating Trustee's duty to maximize recoveries for all Liquidating Trust Beneficiaries, and the Liquidating Trustee's powers, duties, responsibilities, and compensation, which shall be included in the Plan Supplement and shall be in form and substance acceptable to the Committee and, solely with respect to the Liquidating Trustee's duties to Liquidating Trust Beneficiaries and the Wind-Down as it relates to the Debtors and the Non-Debtor Subsidiaries, the Equityholder Representative.

"*Liquidating Trust Assets*" means: (a) Cash in an amount equal to the total amount of Distributable Proceeds less Cash transferred to the Liquidating Trust (if any) on the Effective Date

to fund the Wind-Down Reserve, (b) the Retained Causes of Action transferred to the Liquidating Trust, and (c) the Liquidating Trust's beneficial interests in (i) the remaining balance (if any) in the Carve-Out Account, solely to the extent funds remain after the payment of all Allowed Professional Fee Claims, (ii) any other amounts in the Wind-Down Reserve to the extent funds remain following completion of the Wind-Down, and (iii) the net proceeds of the Wind-Down, if any.

"*Liquidating Trust Beneficiaries*" means the Holders of (a) Allowed General Unsecured Claims in Class 3, and (b) if funds are available, Allowed Existing Equity Interests.

"*Liquidating Trust Interests*" means the beneficial interests in the Liquidating Trust issued to (a) Holders of Allowed General Unsecured Claims pursuant to Article III.B.3 of this Plan, which shall be entitled to share in the Distributable Proceeds, and (b) solely to the extent all Allowed General Unsecured Claims have been paid in full (including Post-Petition Interest), Holders of Allowed Existing Equity Interests pursuant Article III.B.6 of this Plan, which shall be entitled to share in the Equity Distributable Proceeds.

"*Liquidating Trustee Expenses*" means all reasonable and documented fees, expenses, and costs incurred by the Liquidating Trustee in connection with carrying out the obligations under the Liquidating Trust Agreement in accordance with the Wind-Down Budget, including the maintenance or disposition of the Liquidating Trust Assets (including, but not limited to, Liquidating Trustee fees, attorneys' fees, the fees of other non-attorney professionals, and other Persons retained by the Liquidating Trustee, personnel-related expenses, any taxes imposed in respect of the Liquidating Trust Assets), which shall be funded as part of the Wind-Down Reserve in accordance with the terms of this Plan.

"*Location Services Order*" means the *Order (I) Expanding the Proposed Scope of Services to Be Performed Under the Disposition Services Agreement to Include the Sale of Designated Real Property Owned by the Debtors; (II) Authorizing the Debtors to Retain an Agent to Conduct Such Sales and Pay the Fees and Expenses Incurred by Such Agent in Connection Therewith; and (III) Granting Related Relief* entered by the Bankruptcy Court on August 6, 2025 [Docket No. 272].

"*Non-Debtor Subsidiaries*" means, collectively, all direct and indirect non-Debtor domestic or foreign subsidiaries of IG Design Group Americas, Inc.

"*Other Priority Claim*" means a Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code. Notwithstanding anything to the contrary herein, any determination that an Other Priority Claim is an Allowed Other Priority Claim is subject to the consent of the Committee and the Creditor Representative, as applicable.

"*Parent*" means HUK 168 Limited.

"*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code.

"*Petition Date*" means July 3, 2025.

"*Plan Schedule*" means a schedule annexed to this Plan or an appendix to the Disclosure Statement (as amended, modified or otherwise supplemented from time to time).

"*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, all of which are incorporated by reference into, and are an integral part of, this Plan, which shall be in form and substance satisfactory to the DIP Lender and the Committee, as all of the same may be amended, supplemented, or modified from time to time, which may include, but not be limited to, the following documents: (a) the Assumed Executory Contracts and Unexpired Leases Schedule; (b) the Assigned Executory Contracts and Unexpired Leases Schedules; (c) the Schedule of Retained Causes of Action; (d) the Liquidating Trust Agreement; and (e) the Wind-Down Budget.

"*Post-Petition Interest*" means with respect to Class 3 General Unsecured Claims, interest on the principal amount of an Allowed Claim accruing from the Petition Date through and including the Effective Date at the Federal Judgment Rate.

"*Priority Tax Claim*" means any Secured or Unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"*Pro Rata Share*" means, with respect to any Distribution on account of an Allowed Claim, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

"*Professional*" means any Person or Entity retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

"*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Effective Date under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable.

"*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

"*Purchaser*" means any purchaser of the Debtors' assets pursuant to any Asset Purchase Agreement.

"*Quarterly Reporting*" means a periodic report provided to the Creditor Representative and Equityholder Representative by the Liquidating Trustee commencing at the end of the third full calendar month following the Effective Date and each quarterly period thereafter regarding the Wind-Down and the affairs of the Liquidating Trust, including but not limited to, the amount of Liquidating Trust Assets (by category) held by the Liquidating Trust, allowance and disallowance of Claims, the amounts of the Disputed Claims Reserves, and Distributions under this Plan.

Case 25-90164 Document 814 Filed in TXSB on 11/07/25 Page 20 of 72

Notwithstanding any rights provided to the Equityholder Representative herein but subject to the Joint Creditor/Equityholder Consent/Consultation Rights, Quarterly Reporting provided to the Equityholder Representative shall not include any information regarding Claims and Retained Causes of Action against (i) IG Design Group plc, its subsidiaries, its affiliates, and current and former directors, managers, officers, members, English law equivalents of the foregoing, and equity holders of IG Design Group plc and its subsidiaries and affiliates; (ii) any current or former designee of IG Design Group plc appointed to any Debtors' board or equivalent governing body; and (iii) any other former director, officer, member, or manager of any of the Debtors, if doing so would cause a waiver of privilege (including common interest privilege), *provided, however*, that the Equityholder Representative shall not share any information or documents about the Claims and Retained Causes of Action with any of the parties referenced in (i) through (iii) of this definition.

"*Real Estate Liquidator*" has the meaning set forth in the Location Services Order.

"*Reinstate*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the Holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by this Plan in accordance with section 1124(1) of the Bankruptcy Code.

"*Released or Exculpated Claims*" has the meaning set forth in Article X.D hereof.

"*Released Parties*" means collectively: (a) each Debtor and each Wind-Down Debtor; (b) the Debtors' current and former officers and directors (solely in their capacities as such); (c) the DIP Lender (including in its capacity as prepetition lender); (d) Hilco Capital Limited; (e) the Liquidating Agent; (f) the Real Estate Liquidator; (g) the Liquidating Trustee; (h) the Committee and its members; and (i) with respect to each of the foregoing Entities in clauses (a) through (h), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (including, but not limited to, the Parent, but excluding IG Design Group plc, and regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, Affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided*, *however*, that notwithstanding the foregoing or anything else contained herein, IG Design Group plc and its current and former officers and directors (solely in their capacities as such) shall not be Released Parties.

"*Releasing Parties*" means collectively: (a) the Released Parties; (b) all Holders of Claims and Interests who vote to accept this Plan; (c) all Holders of Claims and Interests who abstain from voting on this Plan and who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in this Plan; (d) all Holders of Claims and Interests who (i) vote to reject this Plan, (ii) are deemed to reject this Plan, or (iii) are presumed to accept this Plan and who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable form provided to them indicating that they opt not to grant the releases provided in this Plan in accordance with the

procedures set forth in the Solicitation Procedures Order; and (e) with respect to each of the Debtors, the Wind-Down Debtors, and each of the foregoing Entities in clauses (a) through (d), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), interest holders, predecessors, successors, and assigns, subsidiaries, Affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively.

"*Representatives*" means, with respect to a Person, such Person's current and former (a) officers, (b) directors, (c) managers, (d) principals, (e) members, (f) employees, (g) agents, (h) advisory board members, (i) financial advisors, (j) partners, (k) attorneys, (l) accountants, (m) investment bankers, (n) consultants, (o) representatives, and (p) any other professionals, each in their capacity as such.

"*Retained Causes of Action*" means all Causes of Action owned by the Debtors' Estates that are not released, waived, or transferred pursuant to this Plan or the Sale Orders and listed on the Schedule of Retained Causes of Action included in the Plan Supplement.

"*Sale Orders*" means (a) the *Order (I) Approving the Sale of Certain Debtor Assets Free and Clear of All Liens Claims, Interests, and Encumbrances and (II) Granting Related Relief* [Docket No. 515]; (b) the *Order (I) Authorizing and Approving Debtors' Entry Into Purchase Agreement and Selection of Backup Bid, (II) Authorizing Sale of Purchased Assets to WIPHA Holdings, LLC Free and Clear of All Liens, Claims and Interests, (III) Approving Assumption and Assignment of Designated Contracts, and (IV) Granting Related Relief* [Docket No. 516]; (c) the *Order (I) Authorizing and Approving Debtors' Entry Into Purchase Agreement, (II) Authorizing Sale of Purchased Assets to Simplicity Creative Group, LLC Free and Clear of All Liens, Claims and Interests, (III) Approving Assumption and Assignment of Designated Contracts, and (IV) Granting Related Relief* [Docket No. 517]; (d) the *Order (I) Authorizing and Approving (A) Debtors' Entry Into Purchase Agreement, (B) Sale of Purchased Assets to Carousel Worldwide, Inc. Free and Clear of All Liens, Claims and Interests, and (C) Assumption and Assignment of Designated Contracts; and (II) Granting Related Relief* [Docket No. 519]; (e) the *Order (I) Authorizing and Approving Debtors' Entry Into Purchase Agreement and Selection of Backup Bid, (II) Authorizing Sale of Purchased Assets to Advantus Corp. Free and Clear of All Liens, Claims and Interests, (III) Approving Assumption and Assignment of Designated Contracts, and (IV) Granting Related Relief* [Docket No. 520]; and (f) the *Order (I) Authorizing and Approving Debtors' Entry Into Purchase Agreement, (II) Authorizing Sale of Purchased Assets to CBC Group, Inc. Free and Clear of All Liens, Claims and Interests, (III) Approving Assumption and Assignment of Designated Contracts, and (IV) Granting Related Relief* [Docket No. 521].

"*Sale Transaction*" means any sale of the Debtors' assets to a Purchaser pursuant to the Sale Transaction Documentation.

"*Sale Transaction Documentation*" means any Sale Order or fully executed Asset Purchase Agreement and any documents ancillary thereto and/or incorporated therein by reference.

"*Schedules of Assumed Contracts*" means the Assumed Executory Contracts and Unexpired Leases Schedule and the Assigned Executory Contracts and Unexpired Leases Schedules, both of which shall be included in the Plan Supplement.

"*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

"*Schedules*" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

"*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

"*Secured Claim*" means any Claim against a Debtor where, pursuant to section 506(a) of the Bankruptcy Code, the Claim is secured by a valid, perfected, and enforceable Lien, which is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtor in and to property of an Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date.

"*Solicitation*" means the solicitation of votes on this Plan.

"*Solicitation Procedures*" means the procedures concerning Solicitation established pursuant to the *Emergency Motion of Debtors for Entry of Order (I) Conditionally Approving Disclosure Statement, (II) Establishing Voting Record Date, Voting Deadline, and Other Confirmation-Related Deadlines, (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on Plan, (IV) Approving Form and Manner of Related Notices and Other Documents, and (V) Granting Related Relief*.

"*Solicitation Procedures Order*" means the Final Order of the Bankruptcy Court approving the Solicitation Procedures.

"*SPA*" means the share purchase agreement by and between IG Design Group Plc, as seller, the Parent, as buyer, and Hilco Capital Limited, as guarantor, dated as of May 30, 2025.

"*Statutory Fees*" means all fees and charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

"*Subordinated Claim*" means any Claim: (a) arising from (i) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, (ii) purchase or sale of such a security, or (iii) reimbursement or contribution allowed under section 502 of the Bankruptcy Code

on account of such Claim; or (b) subject to subordination in accordance with section 510(c) of the Bankruptcy Code or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

"*Subordinated Location Sale Fees*" has the meaning set forth in the Location Services Order.

"*Third-Party Release*" means the releases as set forth in Article X.C hereof.

"*Third-Party Released Claims*" has the meaning set forth in Article X.C hereof.

"*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

"*Unexpired Lease*" means a lease to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Claim, or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

"*Unsecured Claim*" means any unsecured Claim against any Debtor that is not entitled to priority under the Bankruptcy Code or any Final Order.

"*Voting Classes*" means Classes 3 and 6.

"*Voting and Objection Deadline*" means December 1, 2025 at 4:00 p.m. (prevailing Central Time).

"*Wind-Down*" means the process of winding down and dissolving the Debtors and the Non-Debtor Subsidiaries by the Liquidating Trustee, cooperating and collaborating with the Equityholder Representative, including, but not limited to, the selling, liquidating, or abandoning of any remaining assets and resolving or terminating any remaining liabilities of the Debtors and the Non-Debtor Subsidiaries, and all actions related to, necessary for, or otherwise appropriate to effectuate the foregoing to completion, as set forth in this Plan, the Liquidating Trust Agreement, and the Combined Order.

"*Wind-Down Amount*" means the amount set forth in the Wind-Down Budget, and any amounts necessary to accomplish the Wind-Down.

"*Wind-Down Budget*" means the initial nine-month budget and any revised budget thereafter that, subject to the Joint Creditor/Equityholder Consent/Consultation Rights, is in form and substance satisfactory to the Debtors, the Liquidating Trustee, and the Committee and sets forth, among other things, (a) the aggregate amounts of Administrative Claims, Other Priority Claims, Priority Tax Claims, and Secured Claims; (b) the Carve-Out Amount; (c) the Liquidating Trustee Expenses; (d) amounts necessary to pay any post-Effective Date fee and/or expense Claims of the Liquidating Agent and Real Estate Liquidator under the Disposition Services Agreement, Disposition Services Side Letter, Location Services Order, and Disposition Services Order,

respectively; (e) all taxes incurred in connection with the Wind-Down (including taxes incurred by the Debtors prior to the Consummation of the Wind-Down and Sale Transaction-related taxes); (f) the reasonable out-of-pocket costs and expenses incurred by the Equityholder Representative up to $100,000, solely with respect to the Wind-Down; *provided, however*, that reasonable out-of-pocket costs and expenses incurred with respect to the Wind-Down in excess of $100,000 may be paid by the Liquidating Trust with the consent of (i) the Liquidating Trustee and the Creditor Representative or (ii) the Liquidating Trustee upon the indefeasible payment of all Allowed General Unsecured Claims in full (including Post-Petition Interest) in Cash, which consent shall not be unreasonably withheld; and (g) any other reasonable fees, costs, taxes, and expenses to be incurred from and after the Effective Date by the Liquidating Trustee in connection with the Wind-Down. Notwithstanding the Joint Creditor/Equityholder Consent/Consultation Rights, and solely with respect to (g), the Equityholder Representative shall have consent rights on this component of the Wind-Down Budget.

"*Wind-Down Debtors*" means the Debtors after the Effective Date.

"*Wind-Down Reserve*" means a segregated account into which the Wind-Down Amount (as reflected in the Wind-Down Budget) shall be deposited on or prior to the Effective Date.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and DIP Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III hereof.

### A. *Unclassified Claims*

1. Administrative Claims

Except (a) with respect to any Administrative Claim that is a Professional Fee Claim or Statutory Fee, (b) to the extent that an Administrative Claim constitutes an Assumed Liability, or (c) to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release and discharge of its Allowed Administrative Claim, the full unpaid amount of such Allowed Administrative Claim in Cash by the Debtors or the Liquidating Trustee, as applicable: (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed between such Holder and the Debtors with the consent of the DIP Lender and the Committee, prior to the Effective Date, or by the Liquidating Trustee, after the Effective Date, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided* that Allowed Administrative Claims that arise in

the ordinary course of the Debtors' business during the Chapter 11 Cases shall be paid in full in Cash in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice by either the Debtors or the Liquidating Trustee, as applicable; *provided further* that the Allowed Claims of the Liquidating Agent and Real Estate Liquidator under the Disposition Services Agreement, Disposition Services Side Letter, Location Services Order, and Disposition Services Order respectively, shall constitute Administrative Claims, in each case payable in accordance with the terms of the underlying agreements and orders by either the Debtors or the Liquidating Trustee, as applicable. For the avoidance of doubt, any Allowed Administrative Claim that has been expressly assumed by a Purchaser under the applicable Sale Transaction Documentation shall not be an obligation of the Debtors and shall be paid by such Purchaser in accordance with the applicable Sale Transaction Documentation.

Except as otherwise provided in this Plan and section 503(b)(1)(D) of the Bankruptcy Code and except with respect to Independent Director Fee Claims, unless previously filed or paid, requests for payment of Administrative Claims must be filed and served on the Debtors or the Liquidating Trustee, as applicable, pursuant to the procedures specified herein, in the Combined Order, the notice of entry of the Combined Order, the notice of occurrence of the Effective Date, or any other order entered by the Bankruptcy Court (as applicable) no later than the Administrative Claims Bar Date; *provided* that the foregoing shall not apply to either (a) the Holders of Claims under section 503(b)(1)(D) of the Bankruptcy Code or (b) the Bankruptcy Court or U.S. Trustee as Holders of Administrative Claims. ***Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims that do not file and serve such request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors and their respective Estates and property, and such Administrative Claims shall be deemed satisfied as of the Effective Date***. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article X.E hereof. Nothing in this Article II.A shall limit, alter, or impair the terms and conditions of the Claims Bar Date Order with respect to the Claims Bar Date for filing administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code.

Objections to requests for payment of Administrative Claims must be filed and served by the Administrative Claims Objection Deadline on (i) the requesting party, and (ii) the Liquidating Trustee, if filed by any party other than the Liquidating Trustee.

2. Professional Fee Claims

All Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, and (b) shall be paid in full from the Carve-Out Account, in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Professional Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidating Trustee. The Liquidating Trustee is authorized to pay Claims of Professionals incurred after the Effective Date in the ordinary course from the Carve-Out Account without the need for Bankruptcy Court approval.

On the Effective Date, the Debtors shall fund the Carve-Out Account with Cash on hand. On and after the Effective Date and until such time as all Professional Fee Claims have been paid in full, the Carve-Out Account shall be administered by the Liquidating Trustee on behalf of the Wind-Down Debtors for Professionals and for no other parties. Professional Fee Claims owing to the applicable Professionals shall be paid in full, in Cash, to such Professionals from funds held in the Carve-Out Account when such Claims are (a) Allowed by an order of the Bankruptcy Court or (b) authorized to be paid following a Professional's submission of an application under the Interim Compensation Order. The Wind-Down Debtors' obligations with respect to Professional Fee Claims shall not be limited by, nor deemed limited to the balance of funds held in, the Carve-Out Account as of the Effective Date. To the extent that funds held in the Carve-Out Account are insufficient to satisfy the Allowed amount of the applicable Professional Fee Claims, the Liquidating Trustee shall pay such amounts from the Distributable Proceeds within ten (10) Business Days after entry of the applicable order of the Bankruptcy Court approving such Professional Fee Claims or the passage of any applicable objection period set forth in the Interim Compensation Order; *provided* that all Allowed DIP Claims shall have been indefeasibly paid in full in Cash before the Allowed amount of such Professional Fee Claims in excess of the funds held in the Carve-Out Account shall be paid from Distributable Proceeds. No Liens, Claims, or interests shall encumber the Carve-Out Account in any way. Any amount remaining in the Carve-Out Account, after all Allowed Professional Fee Claims have been paid in full, shall constitute Distributable Proceeds and shall be promptly be paid to the Debtors or Liquidating Trustee, as applicable, without any further action by or order of the Bankruptcy Court, for Distribution in accordance with this Plan.

Objections to any final requests for payment of Professional Fee Claims must be filed no later than twenty-one (21) days from the date of the filing of such final requests for payment of Professional Fee Claims. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

3. Statutory Fees

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Disbursing Agent shall pay any and all such fees when due and payable from the Liquidating Trust Assets, as applicable. After the Effective Date, the Disbursing Agent shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Liquidating Trustee during the applicable period, attested to by an authorized Representative of the Disbursing Agent. Each and every one of the Debtors and the Liquidating Trustee shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a Proof of Claim or any other request for payment of quarterly fees.

B. *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of its Allowed Priority Tax Claim, at the option of the Debtors with the consent of the Committee or the Liquidating Trustee, as applicable, and with the consent of the Creditor Representative and in consultation with the Equityholder Representative, as applicable, either (i) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due, or as soon as reasonably practicable thereafter), or (ii) equal annual installment payments paid in Cash over a period ending not later than five (5) years after the Petition Date and having a total value equal to the Allowed amount of such Priority Tax Claim; *provided* that any Allowed Priority Tax Claim that has been expressly assumed by a Purchaser under the applicable Sale Transaction Documentation shall not be an obligation of the Debtors or the Liquidating Trust and shall be paid by the Purchaser in accordance with such Sale Transaction Documentation.

C. *DIP Claims*

All DIP Claims shall be deemed Allowed under this Plan in an amount equal to the aggregate amount of the DIP Obligations outstanding at the time of payment, as set forth in a payoff letter in a form to be provided by the DIP Lender at the time of indefeasible payment in full in Cash, including (a) the principal amount outstanding under the DIP Loans on such date, (b) all interest accrued and unpaid thereon through and including the date of payment, (c) all accrued and unpaid fees, discounts, expenses, costs, and indemnification obligations payable under the DIP Documents, and (d) any and all other DIP Obligations.

Prior to the Effective Date and as a condition to effectiveness of this Plan, the DIP Lender shall have received pursuant to a customary pay off letter, in full and final satisfaction, settlement, release and discharge of its Allowed DIP Claims, indefeasible payment in full in Cash and received Cash in the amount of the Indemnification Reserve Amount to fund the Indemnification Reserve Account.

Until all Allowed DIP Claims have been indefeasibly paid in full in Cash prior to the Effective Date, the DIP Lender's Liens and security interests in the DIP Collateral shall remain valid, perfected and enforceable.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

A. *Summary*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against, and Interests in, the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that

Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions, if any, pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. If there are no Claims or Interests in a particular Class for a particular Debtor, then such Class of Claims or Interests shall not exist for all purposes of this Plan for that Debtor.

The Debtors shall be administratively consolidated solely for the purposes of voting, determining which Class or Classes have accepted this Plan, confirming this Plan, and the resulting treatment of all Claims and Interests and Plan Distributions.

**Summary of Classification and Treatment of Claims and Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1. | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2. | Secured Claims | Unimpaired | Presumed to Accept |
| 3. | General Unsecured Claims | Impaired | Entitled to Vote |
| 4. | Intercompany Claims | Impaired | Deemed to Reject |
| 5. | Intercompany Interests | Impaired | Deemed to Reject |
| 6. | Existing Equity Interests | Impaired | Entitled to Vote |

B. *Classification and Treatment of Claims*

1. Class 1 — Other Priority Claims

(a) *Classification*: Class 1 consists of all Other Priority Claims.

(b) *Treatment*: On or as soon as reasonably practicable after the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Priority Claim becomes an Allowed Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of its Allowed Other Priority Claim, payment in full in Cash or such other treatment rendering such Claim Unimpaired. Any Allowed Other Priority Claim that has been expressly assumed by the applicable Purchaser under the applicable Sale Transaction Documentation shall not be an obligation of the Debtors.

(c) *Voting*: Class 1 is Unimpaired under this Plan. Holders of Other Priority Claims are presumed to have accepted this Plan pursuant to section 1126(f)

of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

2. Class 2 — Secured Claims

(a) *Classification*: Class 2 consists of all Secured Claims.

(b) *Treatment*: On or as soon as reasonably practicable after the later of the Effective Date and the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, except to the extent that a Holder of an Allowed Secured Claim agrees to less favorable treatment, each Allowed Secured Claim shall, at the option of the applicable Debtor with the consent of the Committee, the Liquidating Trustee, and the Creditor Representative, as applicable, (i) be paid in full in Cash, (ii) receive the collateral securing such Allowed Secured Claim, or (iii) receive any other treatment that would render such Claim Unimpaired. Any Allowed Secured Claim that has been expressly assumed by the applicable Purchaser under the applicable Sale Transaction Documentation shall not be an obligation of the Debtors.

(c) *Voting*: Class 2 is Unimpaired under this Plan. Holders of Secured Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

3. Class 3 — General Unsecured Claims

(a) *Classification*: Class 3 consists of all General Unsecured Claims.

(b) *Treatment*: In accordance with the Distribution mechanics described in Article VII of this Plan, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall be deemed a Liquidating Trust Beneficiary and shall receive, in full and final satisfaction, settlement, release, and discharge of its Allowed General Unsecured Claim, its Pro Rata Share of (a) the Committee Location Fee Return and (b) the Distributions in respect of its Liquidating Trust Interests.

(c) *Voting*: Class 3 is Impaired under this Plan. Holders of General Unsecured Claims are entitled to vote on this Plan and shall receive Ballots.

4. Class 4 — Intercompany Claims

(a) *Classification*: Class 4 consists of all Intercompany Claims.

(b) *Treatment*: Each Holder of an Allowed Intercompany Claim shall receive no Distribution under this Plan, and all Intercompany Claims shall be canceled, released, extinguished and discharged as of the Effective Date, unless the Debtors, with the consent of the Committee, otherwise agree to adjust or Reinstate such Allowed Intercompany Claim; *provided that* to the

Case 25-90164 Document 814 Filed in TXSB on 11/07/25 Page 30 of 72

extent any adjustment or reinstatement would negatively impact the economic interests of any Purchaser the additional consent of the applicable Purchaser shall be required with any appropriate modifications to be made to the applicable Sale Transaction Documentation.

(c) *Voting*: Class 4 is deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject this Plan.

5. Class 5 — Intercompany Interests

(a) *Classification*: Class 5 consists of all Intercompany Interests.

(b) *Treatment*: Each Allowed Intercompany Interest shall receive no Distribution under this Plan, and all Intercompany Interests shall be canceled, released, extinguished and discharged as of the Effective Date, unless the Debtors, with the consent of the Committee, otherwise agree to adjust or Reinstate such Allowed Intercompany Interest.

(c) *Voting*: Class 5 is deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject this Plan.

6. Class 6 — Existing Equity Interests

(a) *Classification*: Class 6 consists of all Existing Equity Interests.

(b) *Treatment*: In accordance with the Distribution mechanics described in Article VII of this Plan, except to the extent that a Holder of an Allowed Existing Equity Interest agrees to less favorable treatment, each Holder of an Allowed Existing Equity Interest shall be deemed a Liquidating Trust Beneficiary and shall receive, in full and final satisfaction, settlement, release, and discharge of its Allowed Existing Equity Interest, its Pro Rata Share of the Distributions in respect of its Liquidating Trust Interests. Holders of Allowed Existing Equity Interests shall not be entitled to receive a Distribution on account of such Existing Equity Interest until all Allowed General Unsecured Claims have been paid in full, including Post-Petition Interest.

(c) *Voting*: Class 6 is Impaired under this Plan. Holders of Allowed Existing Equity Interests are entitled to vote on this Plan and shall receive Ballots.

C. *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in this Plan, nothing under this Plan shall affect, diminish, or impair the rights of the Debtors, each Purchaser, or the Liquidating Trustee, as applicable, with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D. *Elimination of Vacant Classes*

Any Class of Claims or Interests that is not occupied as of the commencement of the Combined Hearing by an Allowed Claim, Allowed Interest, or a Claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, will be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THIS PLAN

A. *Acceptance or Rejection of this Plan*

1. Presumed Acceptance of Plan

Claims in Classes 1 and 2 are Unimpaired under this Plan and, therefore, the Holders of such Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Classes 1 and 2 are not entitled to vote on this Plan and the votes of such Holders shall not be solicited.

2. Voting Classes

Claims and Interests in Classes 3 and 6 are Impaired under this Plan, and the Holders of Allowed Claims in Class 3 and the Holders of Allowed Interests in Class 6 are entitled to vote to accept or reject this Plan.

3. Deemed Rejection of this Plan

Claims and Interests in Classes 4 and 5 are Impaired under this Plan and the Holders of such Claims or Interests shall receive no Distributions under this Plan on account of their Claims or Interests (as applicable). Claims and Interests in Classes 4 and 5 are, thus, deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Claims and Interests in Classes 4 and 5 are not entitled to vote on this Plan and the votes of such Holders shall not be solicited.

B. *Nonconsensual Confirmation*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by Holders of General Unsecured Claims in Class 3. The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any Class of Claims or Interests that is deemed to have rejected this Plan.

C. *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective Distributions (if any) and treatments under this Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising

under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Liquidating Trustee and the Debtors, as applicable, reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination rights relating thereto.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THIS PLAN

A. *Transactions Effective as of the Effective Date*

The transactions contemplated by this Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other Person or Entity.

B. *General Settlement of Claims and Interests*

Unless otherwise set forth in this Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to this Plan.

This Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Combined Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VII hereof, all Distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

C. *Administrative Consolidation for Voting and Distribution Purposes Only*

This Plan is premised upon the administrative consolidation of the Debtors solely for the purposes of voting, determining whether the Voting Classes have accepted this Plan, confirming this Plan, and the resulting treatment of all Claims and Interests and Plan Distributions. Each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims and Interests under this Plan. The Debtors' administrative consolidation solely for Plan purposes will not affect the legal and corporate structure of the Debtors and will not constitute a transfer of assets or liabilities between the Debtors for any tax purposes. On the Effective Date, and except as otherwise expressly provided in this Plan, solely for voting, Confirmation, and Distribution purposes with respect

to each Class of Claims or Interests: (a) all Claims or Interests in each respective Class shall be deemed merged or consolidated and treated as Claims or Interests against the Debtors on a consolidated basis; (b) each Claim or Interest in each respective Class will be deemed a single Claim against, or Interest in, the consolidated Debtors; (c) any Claim in a given Class based on a guaranty by any Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished, so that any Claim against any Debtor and any guarantee thereof by any other Debtor, and any joint or several liability of any of the Debtors, shall be deemed to be one obligation of the consolidated Debtors; and (d) each Holder of any Allowed Claim or Interest in a given Class shall be entitled to a single recovery on account of such Claim or Interest, in accordance with the treatment provided under this Plan for such Class, regardless of whether such Holder filed Proofs of Claim against multiple Debtors or has Claims against multiple Debtors based on the same or similar debt.

Such administrative consolidation is solely for voting, Confirmation, and Distribution purposes with respect to each Class and shall not constitute a transfer of assets or liabilities between the Debtors for any other purpose.

Moreover, this Plan's treatment shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Wind-Down Debtors or Liquidating Trustee to seek to have any Claim subordinated in accordance with section 510 of the Bankruptcy Code or other applicable law.

D. *The Liquidating Trust*

1. Purpose of the Liquidating Trust

The Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement to qualify as a "liquidating trust" and for the primary purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684 and in accordance with this Plan. The Liquidating Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of any Debtor or Estate.

2. The Liquidating Trust Assets

On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and accept all the Liquidating Trust Assets. As of the Effective Date, all Liquidating Trust Assets and all assets dealt with or treated in this Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise further provided in this Plan or in the Combined Order. The Liquidating Trustee shall be authorized to use any proceeds of the Wind-Down Reserve in connection with the Wind-Down and use the Carve-Out Account for the purposes as explicitly set forth in this Plan. For all U.S. federal income tax purposes, and subject to the DOF Election (as defined in Article V.D.10 below), all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated

as the grantors and owners thereof. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax to the maximum extent provided by section 1146(a) of the Bankruptcy Code.

3. Establishment of the Liquidating Trust and Vesting of the Liquidating Trust Assets

On the Effective Date, the Debtors shall take any and all actions as may be necessary or appropriate to establish the Liquidating Trust and, except as otherwise provided in this Plan, to cause the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust. Upon the Effective Date, the Liquidating Trust shall be vested with all right, title, and interest in the Liquidating Trust Assets, and such property shall become the property of the Liquidating Trust free and clear of all Claims, Liens, charges, other encumbrances, and interests. The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

Subject to the DOF Election (as defined in Article V.D.10 below), the Liquidating Trust is intended to qualify as a "grantor trust" for federal, and applicable state and local, income tax purposes within the meaning of sections 671 through 679 of the Tax Code, with the Liquidating Trust Beneficiaries treated as the sole grantors and owners of the Liquidating Trust. The proceeds of the Liquidating Trust Assets shall be held in trust by the Liquidating Trust and shall not be considered property of the Liquidating Trustee or of any Debtor's Estate. The Liquidating Trustee shall be obligated to distribute the Liquidating Trust Assets and the proceeds thereof to the Liquidating Trust Beneficiaries until the earlier of (i) such beneficiaries being repaid in full and (ii) the Liquidating Trust Assets being exhausted or otherwise depleted; *provided* that the Liquidating Trust Assets may be used by the Liquidating Trustee to fund the expenses of the Liquidating Trust as determined by the Liquidating Trustee in its sole discretion, subject to Article V.D.7 hereof.

4. Appointment of the Liquidating Trustee

Durc Savini is the initial Liquidating Trustee. Any successor Liquidating Trustee shall be appointed pursuant to the Liquidating Trust Agreement.

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have terminated, the persons acting as directors and officers of the Debtors shall be deemed to have resigned, and, subject to the terms hereof, the Liquidating Trustee shall be appointed as the sole director and sole officer of the Debtors, and shall succeed to the powers of the Debtors' directors and officers. From and after the Effective Date, the Liquidating Trustee shall be deemed to have been appointed as the representative of each of the Debtors' Estates by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely for purposes of administering the Liquidating Trust Assets, including the Retained Causes of Action. The Liquidating Trustee shall carry out any necessary functions required by the Sale Transaction Documentation and use commercially reasonable efforts to operate in a manner consistent with the Wind-Down Budget, as may be modified from time to time subject to the Joint Creditor/Equityholder Consent/Consultation Rights (as defined in Article V.D.7 below), and subject to Article V.D.7 hereof.

The powers, authority, responsibilities, and duties of the Liquidating Trustee shall be governed by this Plan, the Combined Order, and the Liquidating Trust Agreement. The Liquidating Trustee may execute, deliver, file, or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan as they relate to the Liquidating Trust.

The Liquidating Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, the Creditor Representative, and the Equityholder Representative; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidating Trustee. Upon its appointment, the successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Liquidating Trustee relating to the Debtors shall be terminated.

5. Responsibilities and Authority

On and after the Effective Date, the Liquidating Trustee shall have the authority and right on behalf of each of the Debtors and Wind-Down Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated or sought by the Liquidating Trustee), to carry out its responsibilities under this Plan, the Combined Order, and the Liquidating Trust Agreement through the conclusion of the Wind-Down, including, without limitation, to:

(a) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including the exclusive authority to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(b) make Distributions to Holders of Allowed Claims in accordance with this Plan, including, without limitation, to establish sufficient reserves (including the Disputed Claims Reserves) necessary to make Distributions on account of Claims that may become Allowed after the Effective Date;

(c) invest Liquidating Trust Assets as set forth below (which, for the avoidance of doubt, shall not exceed the investment powers of the trustee permitted under Revenue Procedure 94-45, 1994-2 C.B. 684 in order for the Liquidating Trust to be treated as a "liquidating trust" for U.S. federal income tax purposes) and permitted in the Liquidating Trust Agreement, withdraw funds, make Distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trustee in accordance with this Plan and the Liquidating Trust Agreement;

(d) liquidate or abandon the Liquidating Trust Assets;

(e) analyze Retained Causes of Action and decide whether to abandon, pursue, litigate, or settle such Retained Causes of Action;

(f) prosecute, as a representative of the Debtors' Estates, any Retained Cause of Action vested in the Liquidating Trust;

(g) exercise its reasonable business judgment to direct and control the Wind-Down, liquidation, sale, or abandonment of the remaining assets of the Debtors under this Plan and in accordance with applicable law as necessary to maximize Distributions to Holders of Allowed Claims;

(h) act as the sole Representative of and, subject to the below, act for, the Wind-Down Debtors;

(i) retain Huron Consulting Services LLC and Dundon Advisers LLC and engage and compensate other professionals and consultants as he or she deems necessary and appropriate for the purpose of carrying out his or her duties;

(j) subject to the below, act for the Debtors in the same fiduciary capacity as applicable to a company's board of directors or equivalent body and officers (and all certificates of formation, membership agreements, and related documents are deemed amended by this Plan to permit and authorize the same);

(k) carry out any necessary functions required by the applicable Sale Transaction Documentation;

(l) maintain the books and records and accounts of the Wind-Down Debtors and obtain any necessary insurance;

(m) administer the tax-related obligations of each Wind-Down Debtor and the Liquidating Trust, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Wind-Down Debtor under Bankruptcy Code section 505(b) for all taxable periods of such Wind-Down Debtor ending after the Petition Date through the liquidation of such Wind-Down Debtor as determined under applicable tax laws, (iii) distributing information statements as required for U.S. federal income tax and other applicable tax purposes to the Liquidating Trust Beneficiaries, and (iv) representing the interest and account of each Wind-Down Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(n) prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Wind-Down Debtors that are required hereunder, by any Governmental Unit or applicable law;

(o) pay Statutory Fees in accordance with Article II.A.3 hereof;

(p) appear and be heard on behalf of the Wind-Down Debtors before any court, tribunal, agency, commission, or other body of any Governmental Unit;

(q) provide the Quarterly Reporting to the Creditor Representative and the Equityholder Representative;

(r) pursuant to any investigation related to a Retained Cause of Action, seek examination of any Person or Entity pursuant to Bankruptcy Rule 2004; and

(s) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement or the Combined Order or as may be necessary and proper to carry out the provisions of this Plan; *provided, however*, that none of such responsibilities vested in the Liquidating Trustee shall affect the status of the Liquidating Trust as a "liquidating trust" for U.S. federal income tax purposes.

The Liquidating Trust and the Liquidating Trustee shall not be required to post a bond. Subject to Article V.D.7 hereof, the Liquidating Trustee shall have the discretion and exclusive authority, subject to the consent of the Creditor Representative, to pursue or not to pursue any and all Retained Causes of Action, as the Liquidating Trustee determines is in the best interests of the Liquidating Trust Beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of its decision, other than those decisions constituting gross negligence or willful misconduct. Subject to Article V.D.7 hereof, any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be conclusive. For the avoidance of doubt, on the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have standing as the representative of each Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to commence and prosecute any Retained Cause of Action belonging to the Liquidating Trust on behalf of such Debtor's Estate without the need for notice or order of the Bankruptcy Court.

6. Compensation of the Liquidating Trustee and Professionals and Consultants

The Liquidating Trustee shall serve on the terms, conditions, and rights set forth in this Plan, the Combined Order and the Liquidating Trust Agreement. The compensation for the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement or otherwise disclosed in a filing with the Bankruptcy Court. Any professionals or consultants retained by the Liquidating Trustee shall not be required to file a fee application to receive compensation. All compensation to the Liquidating Trustee and any professionals or consultants retained by the Liquidating Trustee shall be paid from the Liquidating Trust Assets.

7. Consent and Consultation Rights

Prior to the indefeasible payment of all Allowed General Unsecured Claims in full (including Post-Petition Interest) in Cash, all material decisions made by the Liquidating Trustee shall be subject to (i) consent of the Holders of General Unsecured Claims through the Creditor Representative and (ii) consultation with Holders of Existing Equity Interests through the Equityholder Representative, which consultation shall be satisfied by copying the Equityholder Representative on any email addressing any material decisions and responding to any reasonable inquiries from the Equityholder Representative regarding any such material decisions; thereafter, all material decisions made by the Liquidating Trustee shall be subject to the consent of the Holders of Existing Equity Interests through the Equityholder Representative (the consent and consultation

rights of the Creditor Representative and the Equityholder Representative set forth in this Article V.D.7, the "***Joint Creditor/Equityholder Consent/Consultation Rights***"). For the avoidance of doubt and notwithstanding any other provisions of this Plan, material decisions, shall include, among other things, (i) deciding whether to abandon, pursue, litigate, or settle Retained Causes of Action, (ii) resolving any Claims asserted in an aggregate amount greater than $100,000; (iii) establishing the amount of the Wind-Down Reserve, and (iv) establishing the amount of the Disputed Administrative Claims Reserve and the Disputed General Unsecured Claims Reserve. Notwithstanding the foregoing or any other provisions of this Plan, the Liquidating Trustee shall not be required to provide any information, in the Quarterly Reporting or otherwise, to the Equityholder Representative, if doing so would cause a waiver of privilege (including common interest privilege), provided, however, that the Equityholder Representative shall not share any information or documents about the Claims and Retained Causes of Action with any of the parties referenced in (a) through (c) below, and the Equityholder Representative shall have no consent or consultation rights with respect to any Claims or Retained Causes of Action against (a) IG Design Group plc, its subsidiaries, its affiliates, and current and former directors, managers, officers, members, English law equivalents of the foregoing, and equity holders of IG Design Group plc and its subsidiaries and affiliates; (b) any current or former designee of IG Design Group plc appointed to any Debtor's board or equivalent governing body; and (c) any other former director, officer, member, or manager of any of the Debtors; *provided further, however*, that the Equityholder Representative shall have consent and consultation rights over such Claims and Retained Causes of Action after the indefeasible payment of all Allowed General Unsecured Claims in full (including Post-Petition Interest) in Cash.

8. Indemnification of the Liquidating Trust Indemnified Parties

The Liquidating Trust shall indemnify and hold harmless (i) the Liquidating Trustee in connection with carrying out the obligations under the Liquidating Trust Agreement, including the maintenance or disposition of the Liquidating Trust Assets, and (ii) such other Persons retained by the Liquidating Trustee (collectively, the "***Liquidating Trust Indemnified Parties***"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from such Liquidating Trust Indemnified Party's willful misconduct or gross negligence, with respect to the Debtors or the implementation or administration of this Plan. To the extent a Liquidating Trust Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Liquidating Trust Indemnified Party (and such Liquidating Trust Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Liquidating Trust Indemnified Party is not entitled to be indemnified therefore) out of the Wind-Down Reserve or any insurance purchased using the Wind-Down Reserve.

9. Limitations on the Liquidating Trustee

The Liquidating Trustee, in such capacity, shall not at any time: (a) enter into or engage in any trade or business (except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidating Trust, such as managing and disposing of the Liquidating

Trust Assets), and no part of the Liquidating Trust Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (b) except as provided below, invest any Liquidating Trust Assets.

The Liquidating Trustee may only invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust Agreement, the Bankruptcy Code, or any order of the Bankruptcy Court modifying such requirements; *provided* that, to the extent that the Liquidating Trustee does so, it shall have no liability in the event of insolvency of any institution in which it has invested any funds of the Liquidating Trust. The Liquidating Trust Agreement may provide the Liquidating Trustee with powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes. Notwithstanding the above, the Liquidating Trustee may only invest funds held in the Liquidating Trust in investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

The Liquidating Trustee shall hold, collect, conserve, protect, and administer the Liquidating Trust in accordance with the provisions of this Plan and the Liquidating Trust Agreement, and pay and distribute amounts as set forth herein for the purposes set forth in this Plan and the Liquidating Trust Agreement.

10. U.S. Federal Income Tax Treatment of the Liquidating Trust

The Liquidating Trust (other than the portion which is treated as a "disputed ownership fund," which may be subject to different treatment, as described below), shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of which the Holders who become the Holders of beneficial interests in the applicable Liquidating Trust Assets (as determined for U.S. federal income tax purposes) are the owners and grantors, consistent with the terms of this Plan. All parties (including the applicable Debtors, the Liquidating Trust Beneficiaries, and the Liquidating Trustee) shall report consistently with such treatment (including the deemed receipt of the relevant Liquidating Trust Assets, subject to applicable liabilities and obligations, by the Holders who will own beneficial interests in such Liquidating Trust Assets, as applicable, followed by the deemed transfer of such assets to the Liquidating Trust). All parties shall report consistently with the valuation of the Liquidating Trust Assets as determined by the Liquidating Trustee (or its designee). The Liquidating Trustee shall be responsible for filing returns for the Liquidating Trust as a grantor trust, subject to the DOF Election (as defined in this Article V.D.10), pursuant to Treasury Regulations Section 1.671-4(a). The Liquidating Trustee shall annually send to each holder of an interest in the Liquidating Trust a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes. The sole purpose of the Liquidating Trust shall be the liquidation and distribution of the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), including the resolution of Allowed Claims in accordance with this Plan, with no objective to continue or engage in the

conduct of a trade or business. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may timely elect to (y) treat any portion of the Liquidating Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9 (and make any appropriate elections) (a "***DOF Election***") and (z) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a DOF Election is made pursuant to Treasury Regulations Section 1.468B-9(c), (i) all parties (including the Debtors, the Liquidating Trust Beneficiaries, and the Liquidating Trustee) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing, and (ii) any tax imposed on the Liquidating Trust with respect to assets allocable to Disputed Claims (including any earnings thereon and any gain recognized upon the actual or deemed disposition of such assets) will be payable out of such assets and, in the event of insufficient Cash to pay any such taxes, the Liquidating Trustee may sell all or part of such assets to pay the taxes. The Liquidating Trust will be subject to a termination date not more than five (5) years from the date of its creation. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to the disputed ownership fund and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto. The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Disputed General Unsecured Claims Reserve, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

11. Tax Reporting

All income of the Liquidating Trust shall be subject to tax on a current basis. All items of income, deductions and credit loss of the Liquidating Trust shall be allocated for U.S. federal income tax purposes to the Liquidating Trust Beneficiaries based on their respective interests in the Liquidating Trust, in such manner as the Liquidating Trustee deems reasonable and appropriate. Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidating Trust) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than, if applicable, assets allocable to Disputed Claims) to the holders of interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust. Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed

by the Tax Code, the applicable United States Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

As soon as reasonably practicable after the Liquidating Trust Assets are transferred to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets. Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes and shall be used consistently by such parties for all U.S. federal income tax purposes.

E. *Merger of Debtors; Closing Cases of Debtor Affiliates*

On or after the Effective Date, the Liquidating Trustee (i) may merge or dissolve such Affiliates of the Debtors and complete the winding up of such Affiliates of a Debtor without the necessity for any other or further actions to be taken by or on behalf of such Affiliates or their shareholders or any payments to be made in connection therewith, other than the filing of a certificate of merger or dissolution, as applicable, with the appropriate governmental authorities; (ii) may merge or dissolve any Debtor and complete the winding up of such Debtor without the necessity for any other or further actions to be taken by or on behalf of such Debtor or its shareholders or any payments to be made in connection therewith, other than the filing of a certificate of merger or dissolution, as applicable, with the appropriate governmental authorities; *provided* that upon any merger with another Debtor, all Claims filed or scheduled in the non-surviving Debtor's Chapter 11 Case shall be deemed to have been filed in the surviving Debtor's Chapter 11 Case; and (iii) may seek authority from the Bankruptcy Court to close any Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.

F. *Cancellation of Existing Securities and Agreements*

On the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents evidencing or creating any prepetition Claim or Interest shall be cancelled and of no further force and effect, except that each of the foregoing shall continue in effect solely to the extent necessary to (a) allow Holders of such Claims or Interests to receive Distributions under this Plan; (b) allow the Debtors and the Liquidating Trustee, as applicable, to make post-Effective Date Distributions or take such other actions pursuant to this Plan on account of such Claims and Interests; and (c) allow Holders of Claims or Interests to retain their respective rights and obligations vis-à-vis other Holders of Claims or Interests pursuant to any such applicable document or instrument; (d) preserve any rights of the DIP Lender to payment of fees, expenses, and indemnification obligations against money or property distributed to the lenders under the DIP Documents; (e) preserve the rights of the DIP Lender to appear and be heard in these Chapter 11 Cases to the extent such rights exist; and (f) preserve the right of Holders of Existing Equity Interests in Class 6 to receive any Equity Distributable Proceeds. Notwithstanding the foregoing, any provision in any such agreement, instrument, note, certificates, indenture, mortgage, security document, or other instrument or document that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors of their interests as a result of the cancellations, terminations, satisfaction, or releases provided for in this Article V.F shall be deemed null and

void and shall be of no force and effect. Except for the foregoing, all further duties, obligations, liability, and responsibilities for the DIP Lender related to the DIP Documents shall terminate.

G. *Corporate Action*

Upon the Effective Date, by virtue of entry of the Combined Order, all actions contemplated by this Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

H. *Exemption From Transfer Taxes and Fees*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer pursuant to, in contemplation of, or in connection with this Plan, including pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in connection with the transactions contemplated hereby; (b) the creation, modification, consolidation, termination, refinancing, release or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral security for any or all of any indebtedness; (e) any sale by any Debtor consummated post-Confirmation, and any other transfer from any Entity pursuant to, in contemplation of, or in connection with this Plan; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan and the transactions contemplated hereby, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales tax, use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or fee, or other similar tax, fee or governmental assessment, and the appropriate state or local government officials, recording officers or agents (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code and shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

I. *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

J. *Directors, Managers, and Officers of the Debtors*

Following the Confirmation Date and prior to the occurrence of the Effective Date, the then-current officers, directors, and managers of each of the Debtors shall continue in their respective capacities in accordance with the applicable by-laws or other organizational documents, and the Debtors shall execute such documents and take such other action as is necessary to effectuate the actions provided for in this Plan.

On and after the Effective Date, the Liquidating Trustee shall serve as the sole shareholder, interest holder, officer, director, or manager of each of the Debtors, as applicable, under applicable state law. The existing directors and officers of the Debtors shall be deemed to have resigned on the Effective Date; *provided* that the Independent Director shall retain his authority following the Effective Date with respect to matters relating to Professional Fee Claim requests by Professionals acting at his authority and direction in accordance with the terms of this Plan. The Independent Director shall not have any of his privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Wind-Down Debtors, Liquidating Trustee, or any other entity without the Independent Director's prior written consent.[2] The Independent Director retains the right to review, approve, and make decisions, and to file papers and be heard before the Bankruptcy Court, on all matters under his continuing authority as specifically set forth in this Plan. The Liquidating Trustee, subject to the terms and conditions of this Plan and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

K. *Insurance Policies*

Before the Petition Date, the Debtors obtained the D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) for their current and former directors, officers, and managers. After the Effective Date, all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies and any such "tail policy" for the full term of such D&O Liability Insurance Policies, subject to and in accordance with the terms and conditions of such policies in all respects. Notwithstanding anything to the contrary in this Plan or the Combined Order, to the extent any Insurance Policies have not already been assumed and assigned to the Purchasers pursuant to the applicable Sale Orders or Sale Transaction Documentation, (a) on the Effective Date, the Debtors shall be deemed to have assumed all such Insurance Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code identified on the Schedules of Assumed Contracts, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; (b) neither Confirmation nor Consummation of this Plan shall alter, impair or otherwise modify the terms and conditions of any such Insurance Policy or the coverage provided pursuant thereto (including any indemnity obligations assumed by the foregoing assumption of Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under this Plan as to which no Proof of Claim need be filed) except that on and

2 Without waiving the foregoing, the Independent Director will cooperate with the Liquidating Trustee to pursue any Claims against non-released parties.

after the Effective Date, all Insurance Policies not transferred to the Purchasers pursuant to the applicable Sale Orders or the Sale Transaction Documentation shall vest unaltered and in their entireties in the Wind-Down Debtors or the Liquidating Trustee, as applicable, who shall succeed to all of rights and obligations and shall become and remain liable in full for all of the Debtors' obligations under such Insurance Policies, regardless of whether such obligations arise before or after the Effective Date and without the need for an Insurer to file a Proof of Claim or Administrative Claim or to object to any Cure Notice; (c) for the avoidance of doubt, neither Confirmation nor Consummation of this Plan, nor the vesting of the Insurance Policies in the Wind-Down Debtors and their Estates or the Liquidating Trustee, as applicable, shall impair, alter, modify or otherwise affect (i) any parties' rights to coverage thereunder, including in respect of any claims pending as of the Effective Date or pursued or made thereafter, or (ii) any available defenses of the Debtors or the Liquidating Trustee or any Insurer under the Insurance Policies; and (d) on the Effective Date, the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article X hereof, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) without altering clause (ii) and sub-clause (II) hereof, claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims solely as against the proceeds of the applicable Insurance Policies *provided*, that, such claimants with valid workers' compensation claims or direct action claims against an Insurer must agree to waive any Claims against any of the Debtors, Wind-Down Debtors, or the Liquidating Trust; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article X hereof to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff), in each instance to the extent permissible under applicable non-bankruptcy law and in accordance with the terms of such Insurance Policies.

L. *Indemnification*

Each of the Debtors' obligations (whether in charters, bylaws, limited liability company agreements, other organizational documents, the D&O Liability Insurance Policies, or otherwise) in place as of and immediately prior to the Effective Date to indemnify current and former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtors (collectively, the "***Indemnification Obligations***") shall not be discharged or impaired by Confirmation or Consummation of this Plan and shall remain intact, irrevocable and shall survive the Effective Date on terms no less favorable to, but not greater than, such officers, directors, members, managers, agents, or employees than the indemnification provision in place prior to the Effective Date. All such Indemnification Obligations shall be deemed and treated as Executory Contracts to be assumed by the Wind-Down Debtors under this Plan on the Effective Date.

Additionally, on the Effective Date, the DIP Lender shall receive Cash equal to the Indemnification Reserve Amount to be held in the Indemnification Reserve Account by the DIP

Lender to satisfy any and all remaining obligations of the Debtors to the DIP Lender under the DIP Credit Agreement from the Effective Date through and including the Indemnification Reserve Termination Date. To the extent that such funds are not utilized in full by the DIP Lender for such purpose prior to the Indemnification Reserve Termination Date, any such remaining funds (along with any accrued interest) shall constitute Distributable Proceeds and be returned to the Liquidating Trustee for Distribution in accordance with this Plan. The DIP Lender shall provide a summary notice to the Liquidating Trustee, upon utilization of any portion of the Indemnification Reserve Amount, the amount utilized and the circumstances under which such amount has been used.

M. *Preservation of Retained Causes of Action*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in this Plan, pursuant to a Sale Transaction, or by a Bankruptcy Court order, including the Avoidance Actions waived pursuant to paragraph 5 of the DIP Order, the Debtors expressly reserve and preserve the Retained Causes of Action. On and after the Effective Date, the Liquidating Trustee, with the consent of the Creditor Representative, may pursue the Retained Causes of Action in its sole discretion, subject to Article V.D.5 hereof. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors, with the consent of the Committee, and on and after the Effective Date, the Liquidating Trustee, with the consent of the Creditor Representative, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment the Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party, aside from the consent rights provided in this sentence, or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself and the occurrence of the Effective Date.

All attorney-client privilege, work-product privilege, common interest privilege, or other privilege or immunity attaching to any of the Debtors' documents or communications (in any form, including, without limitation, written, electronic, or oral) shall be transferred to and shall vest in the Liquidating Trust. The Liquidating Trust and the Liquidating Trustee shall also be vested with the Debtors' and the Committee's respective rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004.

N. *Closing of the Chapter 11 Cases*

After a Chapter 11 Case has been fully administered, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close that Chapter 11 Case in accordance with the

Bankruptcy Code and the Bankruptcy Rules. Furthermore, the Claims and Noticing Agent is, with the consent of the Liquidating Trustee and Creditor Representative, and, if General Unsecured Creditors are paid in full with Post-Petition Interest, the Equityholder Representative, authorized to destroy all paper/hardcopy records related to this matter two (2) years after the Effective Date has occurred.

O. *Wind-Down*

On and after the Effective Date, the Debtors, through the Liquidating Trustee, shall (a) continue in existence for purposes of (i) executing the Wind-Down of each Debtor and Non-Debtor Subsidiary as expeditiously as reasonably possible, (ii) resolving Disputed Claims as provided hereunder, (iii) making Distributions on account of Allowed Claims, (iv) filing appropriate tax returns, (v) complying with their continuing obligations under the applicable Sale Transaction Documentation, and (vi) administering this Plan in an efficacious manner; and (b) thereafter liquidate and dissolve as set forth in this Plan, the Liquidating Trust Agreement, and the Combined Order.

The Liquidating Trustee shall have the power and authority, and shall be required to exercise such power and authority, in lieu of the board of directors or similar governing body of any of the direct and indirect Non-Debtor Subsidiaries, to take any action necessary to wind down and dissolve such Entities, including filing a certificate of dissolution or similar documents for any of such Entities, together with all other necessary corporate and company documents, to effect the dissolution of such Entities under the applicable laws of the jurisdiction in which such Entities were formed in accordance with this Plan, the Liquidating Trust Agreement, and the Combined Order. The Liquidating Trustee shall cooperate and collaborate with the Creditor Representative and the Equityholder Representative to effectuate and complete the Wind-Down and the dissolution of the Debtors and any direct and indirect Non-Debtor Subsidiaries.

On the Effective Date, the Debtors shall fund the Wind-Down Reserve in the amount of the Wind-Down Budget, which shall be used in accordance with the terms of the Wind-Down Budget. Any Wind-Down Amount in excess of the Wind-Down Budget shall be paid by the Liquidating Trustee from Distributable Proceeds. Any remaining Cash held by the Debtors after making all of the disbursements contemplated by the Wind-Down Budget and completion of the Wind-Down shall constitute Distributable Proceeds and promptly be distributed in accordance with this Plan.

P. *Fiduciary Obligations*

At any time prior to the Confirmation Date, the Debtors (including any governing body thereof, including the Independent Director) shall be entitled to take any action, or refrain from taking any action, including a decision to pursue an alternative restructuring or transaction, that the Debtors (including any governing body thereof, including the Independent Director) determine is required by its fiduciary obligations.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption, Assumption and Assignment, or Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein (which exclusion shall include the Indemnification Obligations and the D&O Liability Insurance Policies and any other applicable Insurance Policies), on the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts or Unexpired Leases that were not (a) previously assumed, (b) assumed and assigned in accordance with any Sale Transaction Documentation, (c) previously rejected pursuant to an order of the Bankruptcy Court, (d) identified on the Schedules of Assumed Contracts, (e) the subject of a pending motion to reject, assume, or assume and assign as of the Effective Date, nor (f) previously expired or terminated pursuant to their own terms or by agreement of the parties thereto.

Entry of the Combined Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in this Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code as of the Effective Date and a determination by the Bankruptcy Court that the Debtors, the Wind-Down Debtors, or the assignee of such Executory Contract or Unexpired Lease (as applicable) have provided adequate assurance of future performance under such executory contract or unexpired lease. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan shall vest in and be fully enforceable by the applicable Debtor or Wind-Down Debtor in accordance with its terms, except as modified by the provisions of this Plan, any Final Order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law. Notwithstanding the foregoing, before the Effective Date, the Debtors in consultation with the DIP Lender and the Committee shall have the right to amend the Assumed Executory Contracts and Unexpired Leases Schedule and provide notice to affected parties in accordance with the notice provisions contained in Article VI.D. Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Claim, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the Effective Date.

The Cure of all defaults under Executory Contracts and Unexpired Leases to be assumed and assigned under the Asset Purchase Agreements, including the resolution of all objections to the adequacy of amounts proposed to Cure such defaults under such Executory Contracts and Unexpired Leases, shall be governed by the terms and conditions of the applicable Sale Transaction Documentation.

B. *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve, and do not waive any right to receive, or any continuing

obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

C. *Assumption of the D&O Liability Insurance Policies*

On the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court. Confirmation of this Plan shall not discharge, impair, or otherwise modify any Indemnification Obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such Indemnification Obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under this Plan as to which no Proof of Claim need be filed. The Debtors and/or Liquidating Trustee (on behalf of the Liquidating Trust) shall retain the ability to supplement or renew such D&O Liability Insurance Policies as the Debtors and/or Liquidating Trustee (on behalf of the Liquidating Trust), as applicable, may deem necessary and/or to obtain any additional "tail policies" with the consent, which shall not be unreasonably withheld, of the Committee or the Creditor Representative, as applicable. For the avoidance of doubt, entry of the Combined Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O Liability Insurance Policies. In addition, notwithstanding anything to the contrary in this Plan but solely with respect to any of the Debtors' current directors and officers that are Released Parties, the Debtors shall maintain tail coverage under the D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than, but no greater than, under, and with an aggregate limit of liability no less than, but no greater than, the aggregate limit of liability under, the D&O Liability Insurance Policies. In addition to such tail coverage, the D&O Liability Insurance Policies shall remain in place in the ordinary course during the Chapter 11 Cases.

In addition and for the avoidance of doubt, after the Effective Date, none of the Wind-Down Debtors shall terminate or otherwise reduce, nor shall they increase without the consent, which shall not be unreasonably withheld, of the Creditor Representative, the coverage under D&O Liability Insurance Policies covering the Debtors' current boards of directors in effect on or after the Petition Date and, subject to the terms of the applicable D&O Liability Insurance Policies, all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

D. *Notice of Assumption, Cure, and Related Payments and Deemed Consent*

Any Cure Claim shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors or Liquidating Agent (as applicable) may otherwise agree.

The Debtors shall file, as part of the Plan Supplement, the Assumed Executory Contracts and Unexpired Leases Schedule. To the extent practicable, at least twelve (12) days prior to the Combined Hearing, the Debtors shall serve notice of the Assumed Executory Contracts and Unexpired Leases Schedule on parties to the Executory Contracts or Unexpired Leases set forth therein. The notice shall reflect the Debtors' intention to potentially assume or assume and assign the Executory Contract or Unexpired Lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any). **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or proposed Cure Amount must be filed, served, and actually received by the Debtors *within* seven (7) days of the service of the applicable notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.** Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have consented to assumption of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such Executory Contract or Unexpired Lease; (ii) terminate or modify, or permit the termination or modification of, an Executory Contract or Unexpired Lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such Executory Contract or Unexpired Lease or a change, if any, in the ownership or control to the extent contemplated by this Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or asset of any Debtor, Wind-Down Debtor, or the Liquidating Trust (as applicable). Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to this Plan and counterparties to assumed Executory Contract or Unexpired Lease that fail to object to the proposed assumption in accordance with the terms set forth in this Article VI.D shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by this Plan.

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each Executory Contract or Unexpired Lease included in the Assumed Executory Contracts and Unexpired Leases Schedule shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed in the Assumed Executory Contracts and Unexpired Leases Schedule.

If there is a dispute (an "***Assumption Dispute***") pertaining to the assumption of an Executory Contract or Unexpired Lease (other than an Assumption Dispute pertaining to a Cure Claim), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided* that the Debtors or the Liquidating Trustee, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

To the extent an Assumption Dispute relates solely to a Cure Claim, the Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to

the resolution of the Assumption Dispute; *provided* that the Debtors or the Wind-Down Debtors (as applicable) reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Claim by the non-Debtor party (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Debtor or Wind-Down Debtor (as applicable)). The Debtors or Wind-Down Debtors (as applicable) may settle any dispute regarding the Cure Claim or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such Executory Contract or Unexpired Lease.

E. *Rejection Damages Claims*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan must be filed with the Claims and Noticing Agent and served upon the Liquidating Trustee and counsel for the Debtors, as applicable, within thirty (30) days after the occurrence of the Effective Date in accordance with the instructions and procedures set forth in the Combined Order; *provided* that the foregoing deadline shall apply only to Executory Contracts or Unexpired Leases that are rejected automatically by operation of Article VI.A above, and the deadline for filing any rejection damage Claims relating to any Executory Contracts or Unexpired Leases rejected pursuant to a separate order of the Bankruptcy Court shall be the applicable deadline under such order or the Claims Bar Date Order, as applicable. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that becomes an Allowed Claim shall be classified and treated as a General Unsecured Claim against the applicable Debtor.

F. *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Assumed Executory Contracts and Unexpired Leases Schedule, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Wind-Down Debtors or Liquidating Trustee, as applicable, have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, the Wind-Down Debtors, or the Liquidating Trust, as applicable, shall have sixty (60) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

Except as explicitly provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors, the Wind-Down Debtors, or the Liquidating Trustee under any Executory Contract or Unexpired Lease. Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Wind-Down Debtors, or the Liquidating Trustee, as applicable, under any Executory Contract or Unexpired Lease.

G. *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

1. Timing and Calculation of Amounts to Be Distributed and Date of Distributions

Unless otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim or Interest is not an Allowed Claim or Allowed Interest, respectively, on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, respectively, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors and each Holder of an Allowed Interest in the Debtors shall receive the amount of the Distribution that this Plan provides for Allowed Claims and Allowed Interests in the applicable Class which, with respect to Holders of Allowed Claims in Class 3, may be an initial amount subject to subsequent Distributions. Subsequent Distributions shall be made, if determined by the Liquidating Trustee to be practicable and appropriate, on a quarterly basis thereafter; *provided* that the Liquidating Trustee may refrain from making an interim Distribution to the extent the Liquidating Trustee reasonably determines that the costs of making such Distribution are not reasonable in comparison to the amount of such Distribution and instead may reserve making any subsequent Distributions until a future Distribution Date. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VII and Article VIII.

2. Entitlement to Distributions

On and after the Effective Date, the Disbursing Agent shall be authorized (but not directed) to recognize and deal only with those Holders of Claims and Holders of Interests listed on the Debtors' books and records as of the Distribution Record Date. Accordingly, the Disbursing Agent will have no obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim or Allowed Interest that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute any securities, property, notices, and other documents only to those Holders of Allowed Claims and those Holders of Allowed Interests who are Holders of Claims or Holders of Interests (or participants therein) as of the close of business on the Distribution Record Date.

B. *Distributions on Account of Claims Allowed After the Effective Date*

1. Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

2. Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Disbursing Agent, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such Claim becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order. Any Distributions to Holders of Allowed Claims in a Class under this Plan shall be made, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such Distributions were earlier paid to Holders of Allowed Claims in such Class.

C. *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1. Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make Distributions to Holders of Allowed Claims or Interests at the address for each such Holder as indicated on (a) such Holders' address on its Proof of Claim, if applicable, (b) such Holders' address listed on a notice filed with the Bankruptcy Court, if applicable, or (c) if neither (a) or (b) are available, the address of record for the Holder listed on the Debtors' Schedules. The Liquidating Trustee shall not be required to locate alternative addresses for Holders of Allowed Claims or Interests.

2. Undeliverable Distributions and Unclaimed Property

(a) Failure to Claim Undeliverable Distributions

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the date the Distribution was returned. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtors and their Estates (notwithstanding any applicable federal or state escheat,

Case 25-90164 Document 891 Filed in TXSB on 12/03/25 Page 53 of 72

abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be cancelled and forever barred.

(b) Failure to Present Checks

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim for which such check was originally issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within ninety (90) days after the issuance of such check shall have its Claim for such un-negotiated check cancelled, forever barred, and estopped, and such Holder shall be enjoined from asserting any such Claim against the Wind-Down Debtors and their Estates. In such cases, any Cash held for payment on account of such Claims shall be property of the Wind-Down Debtors and their Estates as Liquidating Trust Assets free of the Claims of such Holder with respect thereto. Consistent with Article VII.C.1, nothing contained herein shall require the Disbursing Agent to attempt to locate any Holder of an Allowed Claim or an alternative address for any such Holder.

3. Record Date for Distributions

For purposes of making Distributions on the Initial Distribution Date only, the Disbursing Agent shall be authorized and entitled to recognize only those Holders of Claims reflected in the Debtors' books and records as of the close of business on the Distribution Record Date. If a Claim is transferred (a) twenty-one (21) or more days before the Distribution Record Date and reasonably satisfactory documentation evidencing such transfer is filed with the Bankruptcy Court, the Disbursing Agent shall make the applicable Distributions to the applicable transferee, or (b) twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make Distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form is filed with the Bankruptcy Court and contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

4. Fractional Distributions

Notwithstanding anything in this Plan to the contrary, no payment of fractional cents shall be made pursuant to this Plan. Whenever any payment of a fraction of a cent under this Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

5. *De Minimis* Distributions

Notwithstanding anything to the contrary contained in this Plan, the Disbursing Agent shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $100. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $100 shall be forever barred from asserting such Claim against the Estates. In the event that an interim Distribution to a Holder of any Allowed Claim is

less than $100, but a final Distribution exceeds $100, the Holder of such Allowed Claim shall receive its appropriate Distribution as part of the final Distribution.

D. *Compliance with Tax Requirement; Allocations; Withholding*

In connection with this Plan and all Distributions hereunder, the Liquidating Trustee (and/or any party issuing any instrument or making any Distribution described in this Plan) shall comply with all applicable withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions hereunder and under all related agreements shall be subject to any such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Liquidating Trustee (and/or any party issuing any instrument or making any Distribution described in this Plan) has the right, but not the obligation, to take any and all actions that may be necessary or appropriate to comply with such applicable withholding and reporting requirements, including (a) withholding Distributions and amounts therefrom pending receipt of information necessary to facilitate such Distributions, including properly executed withholding certification forms, (b) in the case of a non-Cash Distribution that is subject to withholding, withholding an appropriate portion of such property and either liquidating such withheld property to generate sufficient funds to pay applicable withholding taxes (or to reimburse the distributing party for any advance payment of the withholding tax) or to permit a relevant party to pay the withholding tax using its own funds and retain such withheld property, and (c) making Distributions conditional on the receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. Notwithstanding any provision in this Plan to the contrary, all Persons and Entities holding Claims or Interests shall be required to provide to the Debtors or Liquidating Trustee, as applicable, any information necessary to effect information reporting and the withholding of applicable taxes (or establish eligibility for an exclusion for the withholding of taxes), and each Holder of an Allowed Claim or Allowed Interest will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations associated therewith, including income, withholding, and other tax obligations. Any amounts withheld or reallocated pursuant to this Article VII.D shall be treated as if distributed to the Holder of the Allowed Claim or Allowed Interest. The Debtors and the Liquidating Trustee reserve the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

The Disbursing Agent may require, as a condition to the receipt of a Distribution, that a Holder furnish to the Disbursing Agent or such other Person designated by the Liquidating Trustee (which shall subsequently deliver to the Liquidating Trustee any such forms received), as applicable, any necessary or appropriate tax documentation and information, including an IRS Form W-8 or IRS Form W-9, as applicable, and including any other forms or documents reasonably required by the Disbursing Agent. If any Holder fails to comply with such a request within 90 days (90) days thereof, such Distribution in respect of such Holder may be withheld and, in such event, shall be deemed an undeliverable Distribution and shall be treated in accordance with Article VII.C.2 hereof.

E. *Surrender of Cancelled Instruments or Securities*

As a condition precedent to receiving any Distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentations shall be deemed to be canceled, except to the extent otherwise provided herein.

F. *Claims Paid or Payable by Third Parties*

1. Claims Paid by Third Parties

The Debtors or the Liquidating Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Liquidating Trustee. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trustee on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Liquidating Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the total Allowed amount of such Claim as of the Distribution Date. If a Holder of a Claim fails to repay or return such Distribution to the Liquidating Trustee, the Liquidating Trustee may file a motion with the Bankruptcy Court seeking repayment or return of such Distribution.

2. Claims Payable to Third Parties

No Distributions under this Plan shall be made on account of a Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon satisfaction by such Insurer, such Claim may be expunged to the extent of such satisfaction upon an order or approval of the Bankruptcy Court or deemed satisfied in full or in part, as applicable.

3. Applicability of Insurance Policies

Except as otherwise provided in this Plan, payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any Insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

G. *Allocation of Plan Distributions between Principal and Interest*

To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest (or original issue discount) thereon, such Distribution shall, except as required by law (as reasonably determined by the Debtors or Liquidating Trustee, as applicable), be allocated first to the principal amount (as determined for

U.S. federal income tax purposes) of the Claim and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued, but unpaid interest (or original issue discount).

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A. *Allowance and Disallowance of Claims*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Combined Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code or this Plan or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim; *provided, however*, subject to the Joint Creditor/Equityholder Consent/Consultation Rights, prior to allowing any General Unsecured Claims (Class 3) in an amount greater than $100,000, Administrative Claims, or Priority Tax Claims, the Debtors or the Liquidating Trustee, as applicable, shall obtain the consent of the Committee or the Creditor Representative, as applicable. Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Sale Orders and Combined Order), the Liquidating Trustee after Consummation will have and retain any and all rights and defenses the Debtors had with respect to any Claim as of the Petition Date.

B. *Prosecution of Objections to Claims*

The Liquidating Trustee shall have the authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan, subject to the Joint Creditor/Equityholder Consent/Consultation Rights. From and after the Effective Date, the Liquidating Trustee, may settle or compromise any Disputed Claim, and may administer and adjust the Claims Register to reflect such settlements or compromises, without notice to, action, order, or approval of the Bankruptcy Court, but consistent with the Joint Creditor/Equityholder Consent/Consultation Rights. The Liquidating Trustee may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law, as necessary; *provided*, *however*, that for the avoidance of doubt, the underlying Claim shall remain under the jurisdiction of the Bankruptcy Court and shall not be Disallowed other than by Final Order of the Bankruptcy Court.

With respect to the foregoing duties of the Liquidating Trustee to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims, the Liquidating Trustee, as the case may be, shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work-product doctrine or any other privilege, and the Liquidating Trustee shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege.

C. *Estimation of Claims*

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, subject to

the Joint Creditor/Equityholder Consent/Consultation Rights, regardless of whether the Liquidating Trustee has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

D. *Disputed Administrative Claims Reserve*

On or after the Effective Date, the Liquidating Trustee, subject to the Joint Creditor/Equityholder Consent/Consultation Rights, shall have the right, but is not required, to establish a Disputed Administrative Claims Reserve and to determine the amount of any Disputed Administrative Claims Reserve based on good faith estimates or an order of the Bankruptcy Court estimating such Disputed Administrative Claims, net of any taxes imposed thereon or otherwise payable by the Disputed Administrative Claims Reserve, and which may be held in the same account as the Wind-Down Amount.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination by the IRS, the Liquidating Trustee shall treat any Disputed Administrative Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9 and to the extent permitted by applicable law, report consistently the foregoing for state and local income tax purposes. All parties (including, to the extent applicable, the Debtors, the Wind-Down Debtors, the Liquidating Trustee and Holders of Disputed Administrative Claims) shall be required to report for tax purposes consistently with the foregoing.

The Liquidating Trustee shall hold in any Disputed Administrative Claims Reserve all payments to be made on account of Disputed Administrative Claims for the benefit of Holders of Disputed Administrative Claims whose Claims are subsequently Allowed. All taxes imposed on the assets or income of any Disputed Administrative Claims Reserve shall be payable by the Liquidating Trustee from the assets of the Disputed Administrative Claims Reserve.

The Disputed Administrative Claims Reserve shall be funded from the Wind-Down Reserve. In the event Cash in the Disputed Administrative Claims Reserve is insufficient to satisfy all of the Disputed Administrative Claims that have become Allowed, such Allowed Claims shall be satisfied from the Wind-Down Reserve. After all Cash has been distributed from the Disputed Administrative Claims Reserve, no further Distributions shall be made in respect of Disputed Administrative Claims, but any excess shall be made from the Wind-Down Reserve. At such time as all Disputed Administrative Claims have been resolved, any remaining Cash in the Disputed Administrative Claims Reserve shall be remitted to the Wind-Down Reserve.

The Liquidating Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Disputed Administrative Claims Reserve for all taxable periods through the date on which final Distributions are made.

E. *Disputed General Unsecured Claims Reserve*

On or after the Effective Date, the Liquidating Trustee shall have the right, but is not required, to establish a Disputed General Unsecured Claims Reserve, subject to the Joint Creditor/Equityholder Consent/Consultation Rights, and to determine the amount of any Disputed General Unsecured Claims Reserve based on good faith estimates or a Final Order of the Bankruptcy Court estimating Disputed General Unsecured Claims, net of any taxes imposed thereon or otherwise payable by the Disputed General Unsecured Claims Reserve, and which may be held in the same account as the Wind-Down Amount. In the event the Disputed General Unsecured Claims Reserve is insufficient to satisfy all of the Disputed General Unsecured Claims that have become Allowed, each such Allowed Claims shall receive its Pro Rata Share of the remaining Liquidating Trust Assets. At such time as all Disputed General Unsecured Claims have been resolved, any remaining Cash in the Disputed General Unsecured Claims Reserve shall be remitted to the Wind-Down Reserve.

F. *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim other than a Subordinated Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date.

G. *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code unless expressly Allowed pursuant to this Plan, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Debtors or the Liquidating Trustee, as applicable. For the avoidance of doubt, this Article VIII.G shall not apply to Avoidance Actions waived pursuant to paragraph 5 of the DIP Order.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

A. *Conditions Precedent to Effective Date*

Unless satisfied or waived pursuant to the provisions of Article IX.B hereof, the following are conditions precedent to the occurrence of the Effective Date of this Plan:

1. The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to this Plan within the meaning of section 1125 of the Bankruptcy Code.

2. The Bankruptcy Court shall have entered the Combined Order, and such order shall (a) not have been vacated and (b) not be subject to a stay pending appeal.

3. The Liquidating Trustee shall have been appointed and vested with the authority under this Plan.

4. The Liquidating Trust Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

5. All DIP Claims shall have received indefeasible payment in full in Cash.

6. Cash in the amount of the Indemnification Reserve Amount shall have been provided to the DIP Lender for purposes of funding the Indemnification Reserve Account.

7. All governmental and third-party approvals, authorizations, rulings, documents, and consents that may be necessary in connection with the Sale Transactions shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the Sale Transactions (as applicable).

8. No court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, limiting, preventing, or prohibiting the consummation of any Sale Transactions or any related transactions.

9. All Allowed fees and expenses then due and payable to the Liquidating Agent and Real Estate Liquidator under the Disposition Services Agreement, Disposition Services Side Letter, Location Services Order, and Disposition Services Order, respectively shall have been paid in full in Cash.

10. All fees and expenses then due and payable to the DIP Lender Advisors shall have been paid in full in Cash.

11. All Allowed fees and expenses then due and payable to the Committee Professionals shall have been paid in full.

12. All Statutory Fees due and payable prior to the Effective Date shall have been paid in full; *provided* that, on and after the Effective Date, the Liquidating Trustee shall pay any and all Statutory Fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.

13. The Wind-Down Reserve shall have been established and funded in an amount consistent with the Wind-Down Budget.

14. The Carve-Out Account shall have been established and funded with the Carve-Out Amount.

B. *Waiver of Conditions*

Subject to section 1127 of the Bankruptcy Code, the conditions to Confirmation and Consummation of this Plan set forth in this Article IX may, with the consent of the Committee, be waived by the Debtors with or without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan; *provided* that the Debtors may not waive the conditions to Consummation set forth in Article IX.A.11 without the prior written consent of the affected Persons (which consent may be given by email). The failure of the Debtors to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

C. *Effect of Non-Occurrence of Conditions to Confirmation or Consummation*

If the Confirmation or the Consummation of this Plan does not occur with respect to one or more of the Debtors, then this Plan will, with respect to such applicable Debtor or Debtors, be null and void in all respects and nothing contained in this Plan or the Disclosure Statement will: (a) constitute a waiver or release of any Claims by, or Claims against or Interests in, the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims, or any other Entity; (c) constitute an allowance of any Claim or Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders of Claims or any other Entity in any respect.

D. *Substantial Consummation*

On the Effective Date, this Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

# ARTICLE X.

# RELEASE, EXCULPATION, INJUNCTION AND RELATED PROVISIONS

A. *General*

Pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall collectively constitute an integrated and global good faith compromise or settlement of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, any Distribution to be made on account of such Allowed Claim or Allowed Interest, including, without limitation, all controversies among the Debtors, the DIP Lender, the Committee, and all other Holders of Claims against the Debtors. This Plan shall be deemed a motion to approve the compromises and settlements contained in this Plan and the good faith compromise and settlement of all of the Claims, Interests and controversies (other than Causes of Action specifically retained by the Debtors' Estates and referenced on the Schedule of Retained Causes of Action) described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The provisions of this Plan, including, without limitation, the global settlement of all Claims, Interests and controversies and the release, injunction, exculpation and compromise provisions provided herein, are mutually dependent. The entry of the Combined Order shall constitute the Bankruptcy Court's approval of all of the provisions of this Plan and settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such integrated compromises and settlements are in the best interests of the Debtors, their Estates and Holders of Claims and Interests and are fair, equitable and reasonable. In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee, subject to the Joint Creditor/Equityholder Consent/Consultation Rights, may compromise and settle Claims against them and Causes of Action against other Entities.

B. *Debtor Release*

On and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors, the Wind-Down Debtors, and the Estates, or their Affiliates, in each case on behalf of themselves and their respective successors, assigns, and Representatives and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Wind-Down Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or

Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, any Company-Related Matters (collectively, the "***Debtor Released Claims***"); provided, however, that the foregoing Debtor Release shall not operate to waive or release, and the Debtor Released Claims shall not include, any Cause of Action of any Debtor or its Estate: (a) against a Released Party arising from any obligations owed to the Debtors pursuant to an Executory Contract or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (b) expressly set forth in and preserved by this Plan or related documents; (c) that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) against a Holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with this Plan except that, for the avoidance of doubt, section 502(d) of the Bankruptcy Code shall not apply to claims against non-insiders under section 547 of the Bankruptcy Code as such claims were waived in paragraph 5 of the DIP Order; or (e) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct. Notwithstanding anything to the contrary in the foregoing, the Debtor Release set forth above does not release any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan with respect to the Debtors, the Wind-Down Debtors, or the Estates.

C. *Release by Holders of Claims and Interests*

On and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, their Estates, or their Affiliates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right, based on or relating to, or in any manner arising from, in whole or in part, the Company-Related Matters (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "***Third-Party Released Claims***"); provided, however, that the foregoing Third-Party Release shall not operate to waive or release, and the Third-Party Released Claims shall not include, any Cause of Action of any Releasing Party: (a) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Wind-Down Debtors, or Company-Related Matters; (b) expressly set forth in and preserved by this Plan or related documents; or (c) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct; provided further, that the foregoing Third-Party Released Claims shall not operate to waive or release, and the Third-Party Released Claims shall not include, any Cause of Action of the Parent or Hilco Capital Limited against IG Design Group plc from any obligations owed to the Parent or Hilco Capital Limited arising from or related

to the SPA. Notwithstanding anything to the contrary in the foregoing, the Third-Party Release set forth above does not release any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan.

D. *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims, Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with or arising out of a Company-Related Matter (the "***Exculpation***" and, together with the Debtor Released Claims and the Third-Party Released Claims, the "***Released or Exculpated Claims***"); provided, however, that the Exculpation shall not waive or release (a) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (b) the Exculpated Parties' rights and obligations under this Plan, the Plan Supplement documents, and the Combined Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the Solicitation of votes on this Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or Distributions made pursuant to this Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E. *Permanent Injunction*

The Combined Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released or exculpated pursuant to this Plan or Combined Order.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Wind-Down Debtors, the Liquidating Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Released or Exculpated Claim or Cause of Action as applicable, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim or Cause of Action of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Wind-Down Debtor, Exculpated Party, or Released Party, as applicable. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim or Cause of Action of any kind, the Bankruptcy Court may, or shall if any Debtor, Wind-Down Debtor, Exculpated Party, Released Party, Liquidating Trustee, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including,

but not limited to, Rule 8 and Rule 9 (as made applicable to these Chapter 11 Cases through Federal Rules of Bankruptcy Procedure 7008 and 7009), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such Claims and Causes of Action to the maximum extent provided by applicable law.

F. *Setoffs*

Except as otherwise expressly provided for in this Plan, each Debtor and the Liquidating Trustee, pursuant to the Bankruptcy Code (including section 558 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, may set off against any Allowed Claim or Allowed Interest and the Distributions to be made pursuant to this Plan on account of such Allowed Claim or Allowed Interest (before any Distribution is made on account of such Allowed Claim or Allowed Interest), any Claims, rights and Causes of Action of any nature that such Debtor or the Liquidating Trustee, as applicable, may hold against the Holder of such Allowed Claim or Allowed Interest, to the extent such Claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to this Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by such Debtor of any such Claims, rights and Causes of Action that such Debtor may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any Claim, right or Cause of Action of the Debtor unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date. For the avoidance of doubt, the timely filing of a Proof of Claim is sufficient to preserve a right of set off hereunder.

G. *Release of Liens*

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and cancelled, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their Estates.

H. *Integral Part of Plan*

Each of the provisions set forth in this Plan with respect to the settlement, release, cancellation, exculpation, injunction, indemnification and insurance of, for or with respect to Claims and/or Causes of Action is an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to

independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Combined Order and the occurrence of the Effective Date, and in addition to the matters over which the Bankruptcy Court shall have retained jurisdiction pursuant to the Sale Orders, the Bankruptcy Court will, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally permissible, including, without limitation, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Interest, including equitable subordination or other subordination of any Claim or Interest pursuant to 11 U.S.C. § 510;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

4. resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5. hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

6. ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes related thereto;

7. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

8. enforce all orders previously entered by the Bankruptcy Court;

9. enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other

agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

10. resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Person or Entity's obligations incurred in connection with this Plan;

11. issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of this Plan;

12. enforce the terms and conditions of this Plan and the Combined Order, and maintain the integrity of this Plan following Consummation;

13. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Combined Order or any release or exculpation adopted in connection with this Plan;

14. resolve any cases, controversies, suits or disputes with respect to the release, Exculpation, indemnification and other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

15. hear and determine disputes arising in connection with the interpretation, implementation, enforcement of the applicable Sale Orders, Asset Purchase Agreements, or other document(s) governing or relating to the applicable Sale Transaction;

16. hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in this Plan, or any order of the Bankruptcy Court, including the Combined Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

17. enter and implement such orders or take such other actions as may be necessary or appropriate if the Combined Order is modified, stayed, reversed, revoked or vacated;

18. enter an order or orders concluding or closing the Chapter 11 Cases;

19. hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 either before or after the Effective Date or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing either before or after the Effective Date; and

20. hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A. *Reservation of Rights*

Except as expressly set forth herein, this Plan will have no force or effect unless and until the Bankruptcy Court enters the Combined Order and this Plan is consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan will be or will be deemed to be an admission or waiver of any rights of: (a) the Debtors with respect to the Holders of Claims or any other Entity; or (b) any Holder of a Claim or an Interest or other Entity with respect to the Debtors prior to the Effective Date.

B. *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Debtors (or the Liquidating Trustee on behalf of each of the Debtors), as applicable, for each quarter (including any fraction thereof) until the earliest to occur of the entry of (a) a final decree closing such Debtor's Chapter 11 Case, (b) an order dismissing such Debtor's Chapter 11 Case, or (c) an order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

C. *Statutory Committee*

On the Effective Date, the current and former members of the Committee, and their respective officers, employees, counsel, advisors and agents, will be released from all further authority, duties, responsibilities and obligations related to, and arising from, and in connection with, the Chapter 11 Cases and the Committee will dissolve; *provided*, *however*, that following the Effective Date, the Committee will continue in existence and have standing and a right to be heard for the following limited purposes (i) pursuing claims and final fee applications filed pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with Article II.A.2 hereof and (ii) participating in any appeals of the Combined Order. Following the completion of the Committee's remaining duties set forth above, the Committee will be dissolved, and the retention or employment of the Committee's respective attorneys, accountants and other agents will terminate without further notice to, or action by, any Entity.

Notwithstanding anything else to the contrary herein, in addition to all other amounts included for purposes of calculating the Carve-Out Amount to be held in the Carve-Out Account pursuant to this Plan, the Carve-Out Amount also shall include $100,000 on account of fees and expenses that may be incurred after the Effective Date by the Professionals retained by the Committee during the Chapter 11 Cases in connection with (i) monitoring the Claims reconciliation process and responding to inquiries from Holders of Claims in Class 3, (ii) pursuing Claims and final fee applications filed pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with Article II.A.2 hereof, and (iii) participating in any appeals of the Combined Order, and any such Professional Fee Claims incurred after the Effective Date shall be paid by the Liquidating Trustee in the ordinary course from the Carve-Out Account without need for

Bankruptcy Court approval; *provided* that nothing in this paragraph shall constitute an acknowledgment of, or agreement to, any continuation of the Committee's existence from and after the Effective Date other than as set forth herein.

D. *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Debtors, with the consent of the DIP Lender and the Committee, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Combined Order in accordance with section 1127(a) of the Bankruptcy Code and (b) after the entry of the Combined Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan in accordance with section 1127(b) of the Bankruptcy Code; *provided* that all such modifications and amendments shall be made with the consent of the Committee. A Holder of a Claim that has accepted this Plan will be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

E. *Revocation or Withdrawal of Plan*

The Debtors, with the consent of the DIP Lender and the Committee, reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

F. *Successors and Assigns*

This Plan will be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

G. *Further Assurances*

The Debtors, all Holders of Claims receiving Distributions hereunder, and all other Entities will, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Combined Order.

H. *Severability*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Combined Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

I. *Votes Solicited in Good Faith.*

Upon entry of the Combined Order, each of the Released Parties and Exculpated Parties will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125 of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, each of the Released Parties and Exculpated Parties and each of their respective Affiliates, agents, Representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan and any previous plan, and, therefore, none of such parties or individuals or the Wind-Down Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the Solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the securities offered and sold under this Plan or any previous plan.

J. *Service of Documents*

Any notice, direction or other communication given regarding the matters contemplated by this Plan (each, a "***Notice***") must be in writing, sent by personal delivery, electronic mail or courier, and addressed as follows:

| Debtors | Counsel to the Debtors |
| --- | --- |
| IG Design Group Americas, Inc.<br>2015 West Front Street,<br>Berwick, PA 18603<br>Attn: Brett Anderson | Latham & Watkins LLP<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Attn: Adam Ravin, Randall Weber-Levine, and Jaclyn Kleban<br><br>330 N. Wabash Avenue, Suite No. 2800<br>Chicago, IL 60611<br>Attn: Caroline Reckler |

| United States Trustee | Co-Counsel to the Creditors' Committee |
|---|---|
| Office of the United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002<br>Attn: Jana Whitworth | Lowenstein Sandler LLP<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Attn: Jeffrey Cohen, David Posner, and Eric Chafetz<br><br>Orrick, Herrington & Sutcliffe LLP<br>609 Main Street, 40th Floor<br>Houston, TX 77002<br>Attn: Ryan C. Wooten<br><br>51 West 52nd Street<br>New York, NY 10019<br>Attn: Mark Franke, Brandon Batzel, and Michael Trentin |
| **Counsel to the DIP Lender** | **Counsel to the Liquidating Agent** |
| Greenberg Traurig, LLP<br>One Vanderbilt Avenue<br>New York, NY 10017<br>Attn: Oscar Pinkas, Jeffrey Wolf, and Charlie Liu | Riemer & Braunstein LLP<br>Times Square Tower, Suite 2506<br>New York, NY 10036<br>Attn: Steven Fox |

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by facsimile, on the Business Day following the date of confirmation of transmission by the originating facsimile, or (c) if sent by electronic mail, when the sender does not receive an undeliverable/bounceback response. Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing. Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed. Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party, except for the Committee. The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

K. *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, the laws of the state of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

L. *Tax Reporting and Compliance*

The Debtors or Liquidating Trustee, as applicable, are hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for any and all taxable periods ending after the Petition Date through and including the liquidation of the Debtors and the termination of the Liquidating Trust as determined under applicable tax laws.

M. *Schedules*

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated herein and are a part of this Plan as if set forth in full herein.

N. *Conflicts*

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement, the Liquidating Trust Agreement, or any order (other than the Combined Order or the Sale Orders) referenced in this Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of this Plan, this Plan shall govern and control; *provided* that, in the event of any conflict with any provision of this Plan and/or the Combined Order, the Combined Order shall govern; *provided further* that, in the event of any conflict between this Plan, on the one hand, and a Sale Order, on the other hand, with respect to a Sale Transaction, the applicable Sale Order shall govern.

O. *Entire Agreement*

Except as otherwise provided herein or therein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

P. *2002 Notice Parties*

After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed a renewed request after the Combined Hearing to receive documents pursuant to Bankruptcy Rule 2002.

[*Remainder of page intentionally left blank.*]

Respectfully submitted, as of the date first set forth above,

Dated: December 3, 2025

**IG DESIGN GROUP AMERICAS, INC.**
on behalf of itself and the other Debtor Entities

*/s/ Brett M. Anderson*
Brett M. Anderson
Chief Strategy Officer